**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------------x

ADYB ENGINEERED FOR LIFE, INC.,

Plaintiffs, 1:19-cv-7800

EDAN ADMINISTRATION SERVICES (IRELAND), LTD. and POM ADVANCED ARMOR SOLUTIONS, LLC,

Defendants.

-----------------------------------------------------------------x

**DEFENDANTS/COUNTERCLAIM PLAINTIFFS' OPPOSITION TO PLAINTIFF ADYB'S PARTIAL MOTION TO DISMISS THE AMENDED COUNTERCLAIM**

In accordance with Local Rule 7.1, this Court's Individual Rules of Practice in Civil Cases, and this Court's April 27, 2020 Order (ECF 92), Defendants/Counterclaim Plaintiffs EDAN Administration Services (Ireland), Ltd. ("EDAN") and POM Advanced Armor Solutions, LLC ("PAAS") respectfully submit their Opposition to ADYB Engineered for Life, Inc.'s Motion to Dismiss. ECF 62. For the reasons set forth below, ADYB's Motion to Dismiss should be denied in its entirety.

# TABLE OF CONTENTS

TABLE OF CONTENTS .......... ii
TABLE OF AUTHORITIES .......... iii
I. SUMMARY OF ALLEGATIONS IN THE AMENDED COUNTERCLAIM .......... 1
II. STANDARD OF REVIEW .......... 3
A. The Amended Counterclaim States a Claim for Tortious Interference with Contract. .......... 4
1. The Amended Counterclaim alleges that ADYB's Intervention Rendered Performance Impossible. .......... 4
2. The Amended Counterclaim states that ADYB and Mr. H. Cohen Acted with Malice and Fraud with the Intent to Harm EDAN and PAAS. .......... 7
3. Count II is Not Duplicative. .......... 8
B. The Amended Counterclaim States a Claim for Tortious Interference with a Business Relation. .......... 9
C. The Amended Counterclaim States a Claim for Fraudulent Inducement. .......... 10
1. The Amended Counterclaim Pleads the "Material Representation" Element with Particularity. .......... 10
2. The Amended Counterclaim Pleads the "Scienter" Element. .......... 11
3. The Amended Counterclaim Pleads the "Justifiable Reliance" Element. .......... 12
4. The Fraudulence Inducement Claim is Not Duplicative. .......... 14
D. The Amended Counterclaim states a Claim for Unjust Enrichment. .......... 15
E. The Amended Counterclaim States a Claim for Libel .......... 17
F. The Declaratory Relief should not be Dismissed. .......... 19
III. CONCLUSION .......... 20

# TABLE OF AUTHORITIES

## Cases

*Aetna Cas. & Sur. Co. v. Aniero Concrete Co.*,
404 F.3d 566, 580 (2d Cir. 2005) .... 10

*Arista Records, LLC v. Doe 3*,
604 F.3d 110 (2d Cir. 2010) .... 18

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .... 18

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .... 4, 19

*Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*,
98 F.3d 13 (2d Cir. 1996) .... 10, 15

*Choquette v. Motor Info. Sys., Inc.*,
2017 WL 3309730 (S.D.N.Y. Aug. 2, 2017) .... 9

*Clark-Fitzpatrick, Inc. v. Long Island R. Co.*,
70 N.Y.2d 382 (1987) .... 16

*Cooper v. City of Chester*,
2011 WL 6046934 (E.D. Pa. Dec. 5, 2011) .... 17, 19

*Geisler v. Petrocelli*,
616 F.2d 636 (2d Cir. 1980) .... 17, 18

*Gemma Power Sys., LLC v. Exelon W. Medway II, LLC*,
2019 WL 3162088 (S.D.N.Y. July 1, 2019) .... 16

*Grimaldi v. Schillaci*,
106 A.D.2d 728 (N.Y. App. Div. 1984) .... 18

*Hersh v. Cohen*,
131 A.D.3d 1117 (N.Y. App. Div. 2015) .... 7

*Horowitz v. Nat'l Gas & Elec., LLC*,
2018 WL 4572244 (S.D.N.Y. Sept. 24, 2018) .... 9

_Kelly v. Schmidberger_,
806 F.2d 44 (2d Cir. 1986)........................................................................................... 17

_Kronos, Inc. v. AVX Corp._,
81 N.Y.2d 90 (1993) ....................................................................................................... 5

_Lam v. Am. Exp. Co._,
265 F. Supp. 2d 225 (S.D.N.Y. 2003)............................................................................ 12

_Liguori v. Alexander_,
495 F.Supp. 641 (S.D.N.Y.1980) .................................................................................. 17

_Lynch v. City of New York_,
952 F.3d 67 (2d Cir. 2020)............................................................................................... 3

_Manning v. Utils. Mut. Ins. Co., Inc._,
254 F.3d 387 (2d Cir. 2001)........................................................................................... 15

_Masefield AG v. Colonial Oil Indus._,
2006 WL 346178 (S.D.N.Y. Feb. 15, 2006).................................................................... 7

_MDC Corp. v. John H. Harland Co._,
228 F. Supp. 2d 38 (S.D.N.Y. 2002)............................................................................... 8

_Nero v. Fiore_,
165 A.D.3d 823, 86 N.Y.S.3d 96 (2d Dep't 2018) ........................................................ 6

_Preferred Health Care, Ltd. v. Empire Blue Cross and Blue Shield_,
1997 WL 160489 (S.D.N.Y. Apr.7, 1997)....................................................................... 8

_The Brooklyn Historic Ry. Ass'n and Robert Diamond v. The City of New York_,
2012 WL 12146010 (N.Y. Sup. Ct., Oct. 24, 2012) ....................................................... 6

_U.S. Fid. & Guar. Co. v. Petroleo Brasileiro S.A.-Petrobras_,
2001 WL 300735 (S.D.N.Y. Mar. 27, 2001) ................................................................... 8

_Wild Bunch, SA v. Vendian Entm't, LLC_,
256 F. Supp. 3d 497 (S.D.N.Y. 2017)............................................................................ 15

**Federal Rules of Civil Procedure**

Rule 12(b)(6) .......... 3
Rule 8 .......... 3, 17, 19
Rule 9(b) .......... 3, 10, 12, 13

## I. SUMMARY OF ALLEGATIONS IN THE AMENDED COUNTERCLAIM

Almost a decade ago, in September 2011, Mr. Hananya Cohen ("Mr. H. Cohen") and Mr. Edwin Cohen ("Mr. E. Cohen") embarked on a promising business endeavor and signed the so-called "Investment Agreement." The Investment Agreement called for Mr. E. Cohen, both as a representative of a NEWCO (which ultimately became Defendant EDAN Administration Services (Ireland), Ltd. ["EDAN"]) and in his personal capacity, to invest funds in Mr. H. Cohen's business, Plaintiff ADYB Engineered for Life, Inc. ("ADYB") and Mr. H. Cohen's patented ballistic-related technology. Amended Counterclaim, ¶¶20-21; Amended Complaint, ¶9. In return, ADYB and Mr. H. Cohen undertook to provide Mr. E. Cohen certain exclusive marketing rights in the technology and percentages in ADYB. The Investment Agreement also included a so-called "milestone" provision. Amended Counterclaim, ¶23; Amended Complaint, ¶12.

During the years following the signing of the Investment Agreement (and other subsequent agreements), EDAN invested millions of dollars in the research, development and marketing of the technology, including payments to Mr. H. Cohen individually, made to his personal bank account.

On September 15, 2016, the long-awaited hope for the commercialization of the technology finally appeared to be coming to fruition. On that day, PPG Industries, Inc., a fortune 200 company ("PPG"), signed an exclusive licensing agreement with PAAS (the wholly owned subsidiary of EDAN and licensee of the technology) to further develop and market the technology (the "PAAS-PPG License Agreement"). Amended Counterclaim, ¶¶51-54. The PAAS-PPG License Agreement covered the patents that were assigned to EDAN by Mr. H. Cohen and thereafter licensed to PAAS. The term of the PAAS-PPG License Agreement was for two years. *Id.*, ¶53.

However, the initial excitement and expectation to finally monetize the technology became short-lived. Approximately one year after the signing of the PAAS-PPG License Agreement, in September 2017, Mr. H. Cohen pulled the plug on the whole venture by his improper and clandestine attempt to revoke the assignment of the rights in the technology assigned to EDAN and then licensed PAAS. Mr. H. Cohen did so by filing revocations of the assignments to EDAN with the United States Patent and Trademark Office ("USPTO"). Thereafter, Mr. H. Cohen directly interfered with the business relationship and venture between EDAN/PAAS and PPG by contacting representatives of PPG with the intent of misappropriating the relationship with PPG for the benefit of himself and ADYB, and to the exclusion of PAAS and EDAN. When EDAN, PAAS and PPG learned of this improper revocation months later, it was only a matter of time before the deal went completely south. Amended Counterclaim, ¶¶71-74.

These unfortunate and drastic turn of events came to a complete surprise to EDAN and PAAS. Throughout 2015-2017, Mr. H. Cohen was aware of the PAAS-PPG venture, encouraged it and was destined to gain from it; Mr. H. Cohen consented to the signing of the PAAS-PPG License Agreement; Mr. H. Cohen made multiple representations that he would cooperate and not interfere with the PAAS-PPG License Agreement; and Mr. H. Cohen also made multiple representations that he would not invoke the so-called "milestone" provision in the Investment Agreement. *See* Amended Counterclaim, ¶¶59-70. As it turned out, these representations were false and were made to ensure that EDAN and PAAS would continue paying Mr. H. Cohen.

Mr. H. Cohen and ADYB are liable for their behavior under the following causes of action: (1) breach of contract (Count I); (2) tortious interference with contract (Count II); tortious interference with business relations (Count III); (4) fraudulent inducement (Count IV); (5) unjust enrichment (Count V); and (6) libel (Count VI).

ADYB has filed a partial motion to dismiss (ECF 62) Count II-VI under Rule 12(b)(6) of the Federal Rules of Civil Procedure ("FRAP") for failure to state a claim ("MTD"). As demonstrated in this memorandum opposition, ADYB's MTD should be denied in its entirety.

## II. **STANDARD OF REVIEW**

A recent decision by the Second Circuit outlines the two-tier analysis governing motions under Rule 12(b)(6) of the FRAP. The first tier "concerns the standards a complaint must meet in order to avoid dismissal on a motion arguing lack of legal sufficiency." *Lynch v. City of New York*, 952 F.3d 67, 74 (2d Cir. 2020). The other principle "concerns the standards by which the court is to judge the complaint in considering such a motion." *Id.* As for the first principle, Rule 8 of the FRCP mandates that pleadings contain "a short and plain statement of the claim showing that the pleader is entitled to relief," so as to give the defendant fair notice of what the claim is and the grounds upon which it rests. Rule 9(b) of the FRCP, applicable to claims sounding if fraud (such as Count IV of the Amended Counterclaim), requires that a party "state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."

As for the second tier, in deciding a Rule 12(b)(6) motion to dismiss, a court must accept all factual allegations in a complaint as true and take them in the light most favorable to plaintiff. *Lynch v. City of New York, supra.* To survive a motion to dismiss for failure to state a claim, factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true, even if doubtful in fact. *Id.; See also* *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). The plausibility standard requires that a plaintiff allege sufficient facts "to raise a reasonable expectation that discovery will reveal evidence" that supports the plaintiff's claim. *Id.*, at 556. Thus, the "court's task is to assess the legal feasibility of

the complaint; it is not to assess the weight of the evidence that might be offered on either side." *Lynch v. City of New York, supra.*

As demonstrated below, all the Counts of the Amended Counterclaim satisfy the Rule 8 and 9 pleading standards and, if proven true, will entitled EDAN and PAAS to the relief sought. Therefore, ADYB's Rule 12(b)(6) MTD should be denied.

## A. The Amended Counterclaim States a Claim for Tortious Interference with Contract

Count II of the Amended Counterclaim is a claim against ADYB and Mr. H. Cohen for their alleged tortious interference with the PAAS-PPG License Agreement. Amended Counterclaim, ¶¶91-97. In its MTD, ADYB argues that the Amended Counterclaim does not allege that "the third party, PPG, actually breached the agreement with PAAS."[1] ADYB also contends that the Amended Counterclaim alleges that its motivation was fueled by an economic interest. Therefore, the claim, as alleged, does not rise to the level of tortious interference because it was not an "intentional" interference. MTD, pg. 4-5. Lastly, ADYB claims that Count II is duplicative. All of these challenges fail.

1. *The Amended Counterclaim alleges that ADYB's Intervention Rendered Performance Impossible.*

Under New York law, the elements of tortious interference with a contract are: "(1) the existence of a contract between plaintiff and a third party; (2) defendant's knowledge of the contract; (3) defendant's intentional inducement of the third party to breach or otherwise render performance impossible; and (4) damages to plaintiff." *Kronos, Inc. v. AVX Corp.*, 81 N.Y.2d 90,

[1] ADYB regards this second challenge as a more "important" challenge. MTD, pg. 4.

94 (1993). The Amended Counterclaim pleads all the facts necessary to state a claim for tortious interference.

As discussed above and in detail in the Amended Counterclaim, approximately one year into the PAAS-PPG License Agreement, ADYB and Mr. H. Cohen filed revocations of the assignments with USPTO. Shortly thereafter, Mr. H. Cohen e-mailed officers of PPG falsely alleging that EDAN and PAAS are liars and do not have any rights in the patents. *Id.*, ¶¶71, 76-78, 80. The PAAS-PPG License Agreement quickly fell apart and became impossible to perform. *Id.*, ¶¶79, 97.

ADYB claims that Count II of the Counterclaim is flawed because it fails to allege "that the third party, PPG, actually breached the agreement with PAAS." This challenge is misplaced and is due to ADYB's hyper-technical understanding of the common law tort of tortious interference. Under *Kronos, Inc. v. AVX Corp*, *supra*, a claim sufficiently states a tortious interference cause of action if it pleads that the defendant intentionally induced the third party to breach *or otherwise render performance impossible*.[2] There can be no question about it: Mr. H. Cohen/ADYB's actions made performance under the PAAS-PPG License Agreement **impossible**. Indeed, this is the essence of EDAN and PAAS's Counterclaim. *See* Amended Counterclaim, ¶¶1-11.

The facts alleged in the Amended Counterclaim are identical to the archetypical fact pattern that gives rise to a viable tortious interference claim in numerous other New York cases. In a

[2] This is also evident in authority cited by ADYB, *P. Kaufmann, Inc. v. Americraft Fabrics, Inc.*, 198 F. Supp. 2d 466, 472 (S.D.N.Y. 2002). The court there, relying on New York law, describes the third element as "the alleged tortfeasor's improper intentional interference with [the contract's] performance without justification […]"

relatively recent case, a New York appellate court held that a dog trainer's allegations that (1) he was owner of a dog, (2) that his former girlfriend had unauthorized possession of the dog, and (3) that the girlfriend's intentional interference rendered impossible the trainer's performance of an agreement with a third party to train the dog were sufficient to state a claim for tortious interference against the girlfriend. *Nero v. Fiore*, 165 A.D.3d 823, 86 N.Y.S.3d 96 (2d Dep't 2018). Conceptually, there is no difference between *Neor v. Fiore* from the case at hand. Plugging in our facts to the *Nero v. Fiore* scenario we arrive at the conclusion that Amended Counterclaim stated a cause of action: (1) EDAN and PAAS were the rightful owners of the technology; (2) ADYB/Mr. H. Cohen took and/or attempted to take unauthorized possession of the technology; (3) the unauthorized possession rendered it impossible to perform an agreement with PPG.

In *The Brooklyn Historic Ry. Ass'n and Robert Diamond v. The City of New York*, 2012 WL 12146010, at *3 (N.Y. Sup. Ct., Oct. 24, 2012) the plaintiffs' alleged that they had a contract with a third-party to have a film exhibition in a space in the possession of the plaintiffs. The defendants in that case, without contacting the plaintiffs, called the third-party and informed it that if the exhibition went forward it would be shut down. The exhibition, in fact was cancelled as a result of the defendants' interference. The court found that the allegations were sufficient to state a cause of action for tortious interference with contractual relations. The fact pattern in *The Brooklyn Historic Ry. Ass'n* is identical to the facts alleged in the Amended Counterclaim.

As alleged (and what can certainly be inferred), the PAAS-PPG License Agreement was no longer viable because of ADYB and Mr. H. Cohen's interference, and as a result, PPG ceased working with EDAN/PAAS towards the advancement and monitorization of the technology. This fact satisfies the "impossibility-to-perform" element of tortious interference. *See also*, *Hersh v. Cohen*, 131 A.D.3d 1117 (N.Y. App. Div. 2015).

2. *The Amended Counterclaim states that ADYB and Mr. H. Cohen Acted with Malice and Fraud with the Intent to Harm EDAN and PAAS.*

ADYB's second attack on Count II is that it fails to state that the interference was "without justification." MTD, pg. 4. Specifically, ADYB claims that the Counterclaim does not state that the "alleged acts of interference were taken for the sole purpose of harming Counterclaim Plaintiffs, were criminal or fraudulent." *Id.* ADYB relies on the theory that in cases where defendants have an economic interest in the subject contract, a plaintiff must "show that the interference was either malicious or involved conduct rising to the level of criminality or fraud." *Masefield AG v. Colonial Oil Indus.*, 2006 WL 346178, at *5 (S.D.N.Y. Feb. 15, 2006) (collecting cases).

Notwithstanding this heightened pleading requirement, the Amended Counterclaim sufficiently alleges that ADYB and Mr. H. Cohen acted with malice and fraud when intervening with the PAAS-PPG License Agreement. As discussed above and in the Amended Counterclaim, Mr. H. Cohen led EDAN and PAAS to believe that he would not cause any disruptions in the PAAS-PPG venture. He made these representations all the while receiving significant funds from EDAN and PAAS. One year into the PAAS-PPG License Agreement, Mr. H. Cohen clandestinely filed assignment revocations with the USPTO, without any justification, and for the purpose of extorting additional money from EDAN and PAAS. Amended Counterclaim, ¶¶79. Thus, notwithstanding any economic interest Mr. H. Cohen *may* have had in the PAAS-PPG License Agreement, his interference was premised on alleged fraud (*see*, for example, Count IV) and done covertly.

Moreover, the Amended Counterclaim also alleges that Mr. H. Cohen's tortious behavior was an attempt to misappropriate the business relationship that EDAN and PAAS

had been cultivating for years for the benefit of ADYB and himself and to the exclusion of EDAN and PAAS. Paragraph 82 of the Amended Counterclaim clearly states that:

> after Hananya filed the revocations, he personally approached PPG to assess whether he and ADYB could develop a deal without EDAN and PAAS. Clearly, Hananya and ADYB's actions were a deliberate and wrongful attempt to misappropriate from EDAN and PAAS for themselves the business opportunity and relationship with PPG and realize and reap for themselves the substantial monetary profits, all to the exclusion of EDAN and PAAS.

Lastly, the Amended Counterclaim states that the interferences were "egregious, destructive and dishonest" and were "intentional, aimed to harm PAAS and EDAN." *Id.*, ¶¶94-95. This Court has denied motions to dismiss under similar – even less compelling – circumstances. *See Preferred Health Care, Ltd. v. Empire Blue Cross and Blue Shield*, 1997 WL 160489, at *3 (S.D.N.Y. Apr.7, 1997) (finding that a counterclaim alleging that plaintiffs acted "with malice" was sufficient to withstand a Rule 12(b)(6) motion to dismiss for a tortious interference claim); *MDC Corp. v. John H. Harland Co.*, 228 F. Supp. 2d 387, 398 (S.D.N.Y. 2002) (same); *U.S. Fid. & Guar. Co. v. Petroleo Brasileiro S.A.-Petrobras*, 2001 WL 300735, at *24 (S.D.N.Y. Mar. 27, 2001) (same).

3. *Count II is Not Duplicative.*

"As a general rule, tortious interference claims that are duplicative of contract claims are precluded." *Choquette v. Motor Info. Sys., Inc.*, 2017 WL 3309730, at *6 (S.D.N.Y. Aug. 2, 2017) (collecting cases). However, that general rule does not categorically prohibit parallel tortious interference and breach of contract claims. Rather, it requires that plaintiffs show that their tort claim is based on "a duty that springs from circumstances extraneous to and not constituting elements of, the parties' contract." *Id. See also Horowitz v. Nat'l Gas & Elec., LLC*, 2018 WL 4572244, at *7 (S.D.N.Y. Sept. 24, 2018) (internal quotations omitted).

Here, Count II is based on additional duties that are extraneous to the contract between the parties. As alleged, ADYB and Mr. H. Cohen had a duty to refrain from interfering with the PAAS-PPG License Agreement. This duty not only stemmed from Mr. H. Cohen and ADYB's contractual obligations under the Investment Agreement, but also from their multiple post-contract representations. These post-contract representations were extraneous to and independent of the Investment Agreement. In fact, according to the Amended Counterclaim, even if Mr. H. Cohen or ADYB were entitled to invoke the "milestone" provision under the Investment Agreement (which EDAN and PAAS deny), they still had a duty to refrain from interfering with the PAAS-PPG License Agreement based on estoppel-related principles. Amended Counterclaim, ¶¶ 6-7, 59-70, 106, 109-110. Accordingly, Count II is not duplicative of Count I.

### B. <u>The Amended Counterclaim States a Claim for Tortious Interference with a Business Relation</u>

ADYB's arguments against Count III mirror its arguments against Count II. ADYB argues that Defendants "fail to show the third and fourth element that Plaintiff acted for a wrongful purpose or used dishonest or improper means and that defendant's acts injured the relationship between PAAS and PPG." MTD, pp. 6-7; compare to MTD, pg. 4. Also, as in Count II, ADYB asserts that Count III is duplicative of Count I.

Accordingly, EDAN and PAAS respectfully refer the Court to their arguments above in relation to Count II and incorporate them here, *mutatis mutandis*, to Count III. For those same reasons, Count III should not be dismissed.

### C. The Amended Counterclaim States a Claim for Fraudulent Inducement

Under New York law, the essential elements of fraudulent inducement are as follows: (1) the defendant made a material false representation, (2) the defendant intended to defraud the plaintiff thereby, (3) the plaintiff reasonably relied upon the representation, and (4) the plaintiff suffered damage as a result of such reliance. *Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*, 98 F.3d 13, 19 (2d Cir. 1996).

As mentioned above, Rule 9(b) of the FRCP requires a claimant to "state with particularity the circumstances constituting fraud or mistake." *See Aetna Cas. & Sur. Co. v. Aniero Concrete Co.*, 404 F.3d 566, 580, 583 (2d Cir. 2005) (applying particularity requirement to claims for fraudulent inducement and negligent misrepresentation).

Taking the allegations of the Amended Counterclaim as true, all the elements of fraudulent inducement have been pled with particularity:

1. *The Amended Counterclaim Pleads the "Material Representation" Element with Particularity.*

ADYB and Mr. H. Cohen made multiple representations that they would agree to remove the benchmark provision in the Investment Agreement. Amended Counterclaim, ¶¶59, 61, 106; They also made multiple representations that they would continue to cooperate with the PAAS-PPG venture. *Id.*, ¶66, 105. These representations were made throughout 2014-2017 to both Mr. E. Cohen and Mr. Craig Schwimmer. *Id.*, ¶¶61, 105. The Amended Counterclaim even provides examples of such representations, when and where they took place *Id.*, ¶¶62, 66.[3]

[3] During discovery, ADYB produced recorded telephone conversations between Mr. H. Cohen and M. E. Cohen in which additional representations were made by Mr. H. Cohen assuring Mr. E. Cohen that he will continue cooperating.

ADYB's challenges regarding these misrepresentations are confusing. ADYB contends that because these representations were post-contractual "they cannot have induced Counterclaim Plaintiffs to enter into the 2011 Investment Agreement or invest money under its terms." MTD, pg. 10. A similar argument is made regarding what ADYB categorizes as "Fraudulent inducement with respect to the PAAS-PPG license agreement." MTD, pg. 11.

ADYB's challenges fail because EDAN and PAAS do not allege anywhere that Mr. H. Cohen's misrepresentations caused them to enter into the Investment Agreement or the PAAS-PPG License Agreement. Rather, EDAN and PAAS allege that the misrepresentations caused them to rely on Mr. H. Cohen's cooperation going forward which, in turn, caused them damages. In this regard, ADYB claims, out of left field, that EDAN and PAAS "continued investing in the technology after said statements were made, not because they relied on them, but because they had contractual obligations to PPG under the PAAS-PPG Agreement." MTD, pg. 11. Even assuming this baseless claim is true (which EDAN and PAAS vehemently deny), it does not change the fact that had EDAN and PAAS knew that Mr. H. Cohen had no intention to go forward, they could and would have cut their losses earlier. Hence, ADYB's assertion is false, irrelevant and merely demonstrates why the issues raised in the MTD are not ripe to be adjudicated at this juncture.

2. *The Amended Counterclaim Pleads the "Scienter" Element.*

While Rule 9(b) of the FRCP places a heightened pleading requirement on claims in fraud, it is more relaxed when it come to the "scienter" element. Given the difficulty of proving a defendant's state of mind, in particular at the early stages of a litigation, "scienter" may be demonstrated by specifying a motive for the defendant to commit fraud, *i.e.*, that the defendant benefitted from the alleged fraud, and had a clear opportunity to commit fraud. *Lam v. Am. Exp. Co.*, 265 F. Supp. 2d 225, 235 (S.D.N.Y. 2003).

Here, the Amended Counterclaim states unequivocally that Mr. H. Cohen never had any intention to continue to cooperate with Counterclaim Plaintiffs EDAN and PAAS when he made his (mis)representations. Amended Counterclaim, ¶70. Moreover, EDAN and PAAS made clear that Mr. H. Cohen benefitted from his alleged misrepresentations because he continued to receive significant funds from them.[4] In fact, as alleged, Mr. H. Cohen accepted payments from EDAN and PAAS even after he covertly casted a cloud over the rights in the technology by improperly filing revocations with the USPTO (*Id.*, ¶71-73). Therefore, the Amended Counterclaim provides a strong basis for the "scienter" element- Mr. H. Cohen's pecuniary benefits he was receiving as a direct result of his misrepresentations. Accordingly, the Amended Counterclaim sufficiently pleads "scienter," even under Rule 9(b) of the FRCP.

3. *The Amended Counterclaim Pleads the "Justifiable Reliance" Element.*

ADYB further contends that EDAN and PAAS's reliance on Mr. H. Cohen's (mis)representations was not justifiable for the following four reasons: *First*, ADYB claims there is no reliance because Mr. H. Cohen refused to sign the purported "understanding" in or around February 15, 2017. While it is true that Mr. H. Cohen refused to sign the document, that does not change the fact that during 2016 and up until February 2017 (at least), EDAN and PAAS reasonably relied on Mr. H. Cohen's multiple oral representations, including the representation that took place in Israel in December 2016. *Second*, ADYB claims that EDAN and PAAS made

---

[4] *See* Amended Counterclaim, ¶65:

> To that end, Hananya actively and affirmatively encouraged EDAN and PAAS to enter into negotiations with PPG (and subsequently sign the PAAS-PPG License Agreement), knowing that he had no real intentions to remove the benchmarks or otherwise cooperate. Hananya merely waited on the sidelines for the opportune moment to destroy the deal between PAAS and PPG, all the while making the best of his financial position vis-à-vis EDAN and PAAS.

payments to Mr. H. Cohen during October 2017, after the revocation of the assignments. However, EDAN and PAAS only learned about the revocation – which was done covertly – in March 2018. In addition, this argument has no bearing on the additional expenses and costs incurred because of the misrepresentations. *See* Amended Counterclaim, ¶110. *Third*, ADYB contends that EDAN and PAAS "acknowledge they failed to meet their part of the bargain." This assertion is blatantly false and misleading. Nowhere in the Amended Counterclaim do EDAN and PAAS make any such acknowledgment. Paragraph 106, cited by ADYB, does not state that EDAN and PAAS failed to meet their obligations. It merely states that "EDAN was unable to provide additional payments without risking its ability to continue to develop and market the technology."[5] *Lastly*, ADYB claims that EDAN and PAAS have alleged that Mr. H. Cohen already threatened to "pull the plug on the whole thing" back in 2014. The Amended Counterclaim makes no such assertion.[6] Moreover, even if such a statement was made in 2014, that does not change the fact

---

[5] Paragraph 106 reads in its entirety as follows:

> Hananya refused to further negotiate unless provided with more money. EDAN was unable to provide additional payments without risking its ability to continue to develop and market the technology. Nevertheless, because of the importance of the PPG deal, EDAN agreed that it would make certain payments to Hananya based on the expressed and implied representations of Hananya that he would agree to amend the terms of the original agreements (or, at the very least, not disrupt the PAAS-PPG License Agreement).

ADYB misconstrues this statement. The premise of the allegation is that EDAN was under no obligation to pay Mr. H. Cohen *anything*. Any additional payment that might have been forthcoming was not because EDAN was obliged to do so. Rather, payments were voluntarily made by EDAN because of the fear that Mr. H. Cohen would improperly and illegally thwart the PAAS-PPG deal. *See* Amended Counterclaim, ¶49-50.

[6] Here too, ADYB misstates and misconstrues the Amended Counterclaim. ADYB cites paragraph 50 of the Amended Counterclaim which states as follows:

> Therefore, during the summer of 2014, Hananya made a demand that his monthly payments be raised from $3,000 to $8,000 per month. There was nothing in the original agreements that entitled Hananya to make any such demands (in fact, there was nothing in the original

that throughout 2016 and 2017, Mr. H. Cohen represented that he would, in fact, support and cooperate with the PAAS-PPG venture. *See* Amended Counterclaim, ¶¶59-70. Accordingly, ADYB's challenge here is without any merit.

4. *The Fraudulence Inducement Claim is Not Duplicative of Count I.*

ADYB's last challenge against Count IV is that "the alleged fraudulent conduct amounts only to the Counterclaim Defendant's false representation that it would adhere to the terms of the Investment Agreement." MTD, pg. 14. According to ADYB, this is duplicative of Count I and should be dismissed.

This argument fails. Under New York law, "a misrepresentation [that] is merely a statement of intent to perform under the contract […] cannot constitute fraud." *Manning v. Utils. Mut. Ins. Co., Inc.*, 254 F.3d 387, 401 (2d Cir. 2001). To maintain a fraud claim based on such misrepresentations, a plaintiff must do one of the following: (i) demonstrate a legal duty separate from the duty to perform under the contract; or (ii) demonstrate a fraudulent misrepresentation collateral or extraneous to the contract; or (iii) seek special damages that are caused by the misrepresentation and unrecoverable as contract damages. *Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*, *supra*, at 20; *see also* *Wild Bunch, SA v. Vendian Entm't, LLC*, 256 F. Supp. 3d 497, 502 (S.D.N.Y. 2017).

---

> agreements that he be paid even $3,000 per month or any other amount). However, the economic potential of the PPG deal and the fear of what Hananya might do to that connection should his demands not be met led EDAN to acquiesce to his demands. Beginning in the summer of 2014, Hananya began receiving $8,000 per month.

Paragraph 50 does not contain the phrase "pull the plug…". The preceding paragraph does contain such a phrase. However, the phrase was not describing what Mr. H. Cohen stated. Rather, the phrase was describing what his motive and state-of-mind was when making the additional payment demands.

Here, Mr. H. Cohen – as alleged – made multiple post-contract representations that he would not invoke the milestone provision in the Investment Agreement, knowing these statements to be false. These statements, by their very nature, are extraneous to the Investment Agreement and, in fact, negate it. Moreover, Mr. H. Cohen made multiple statements that he would cooperate with the PAAS-PPG venture. Contrary to ADYB's position, this statement was not merely Mr. H. Cohen affirming he would adhere to the terms of the Investment Agreement. Rather, it was also his (false) affirmation that even though he *could* thwart the deal by invoking the milestone provision (according to his position), he would not do so.[7] Therefore, Mr. Cohen's alleged statements were extraneous to the Investment Agreement and are actionable for fraud under *Bridgestone/Firestone, supra.* Moreover, as alleged, these (mis)representation also imposed on Mr. H. Cohen an independent duty under estoppel principals to cooperate with the PAAS-PPG venture. *See* Amended Answer, Second Affirmative Defense; Amended Counterclaim, ¶¶6, 11. This fact as well justifies denying ADYB's challenge here.

Accordingly, Count IV is a viable cause of action notwithstanding a parallel, yet distinct and independent, breach of contract claim.

### D. **The Amended Counterclaim States a Claim for Unjust Enrichment**

ADYB contends that "the recovery sought under the unjust enrichment claim is identical with the one sought for breach of contract" and therefore should be dismissed. ADYB relies on the 1987 case, *Clark-Fitzpatrick, Inc. v. Long Island R. Co.*, 70 N.Y.2d 382, 389 (1987). However, this challenge is also wrong. "As the *Clark-Fitzpatrick* decision implies, limitation of pleading

[7] In other words, even if – theoretically – EDAN and PAAS are unsuccessful in their breach of contract claim, they still may maintain a fraudulent inducement claim based on Mr. H. Cohen and ADYB's post-contract misrepresentations.

claims sounding in quasi-contract does not apply when the written agreement, or lack thereof, does not cover the full scope of the dispute between the parties." Gemma Power Sys., LLC v. Exelon W. Medway II, LLC, 2019 WL 3162088, at *5 (S.D.N.Y. July 1, 2019). Thus, whether or not a quasi-contract claim can proceed depends upon (1) whether a written agreement exists, (2) whether such agreement covers the subject matter of the quasi- contract claims, and (3) whether the contract is valid and enforceable. *Id*.

Here, the breach of contract claim does *not* cover the full scope of the dispute between the parties. The unjust enrichment claim specifically targets monies that were provided to ADYB and Mr. H. Cohen (approximately $520,000). *See* Counterclaim, ¶114. These monies were paid to ADYB and Mr. H. Cohen outside of the framework of any contract between the parties and are not covered by any of the agreements that are subject to the breach of contract claim (*i.e.* the 2011 Investment Agreement, MOU-1). ADYB appears to argue that it and Mr. H. Cohen could not be "unjustly unreached [*sic*] if they received said payments under an oral agreement and understanding between the parties." However, this claim is yet another attempt to misconstrue the allegations for the purposes of the MTD. EDAN and PAAS do not allege that they were obligated (under contract or otherwise) to make payments to Mr. H. Cohen. There was no written or oral contract that required them to make any payments. In the Amended Counterclaim, EDAN and PAAS went out of their way to emphasize this fact (*see* fn. 6 above). Therefore, the unjust enrichment claim does not fall within the ambit of the breach of contract claim.[8]

---

[8] See also fn. 7 above: even if – theoretically – EDAN and PAAS are unsuccessful on their breach of contract claim, they may still maintain an unjust enrichment claim based on Mr. H. Cohen and ADYB's post-contract misrepresentations.

**E. The Amended Counterclaim States a Claim for Libel**

ADYB argues that the Amended Counterclaim does "not identify the allegedly defamatory statements" and does "not specify the time the statements were made." MTD, at 18. Therefore, according to ADYB, "it is impossible for Counterclaim Defendant or the court to determine whether or not the allegedly made statements are libel *per se*. The complaint does not quote or sufficiently paraphrase the alleged libelous statements […]". *Id*. This challenge also fails.

Defamation claims are subject to the more relaxed pleading requirements of Rule 8 of the FRCP. *Geisler v. Petrocelli*, 616 F.2d 636, 640 (2d Cir. 1980) ("pleading defamation is governed by Rule 8, which requires only that [the] plaintiff's charges be set forth in a short and concise statement"); *Cf. Cooper v. City of Chester*, 2011 WL 6046934, at *10 (E.D. Pa. Dec. 5, 2011) (same). The pleadings in a defamation case only need to be sufficiently detailed to the extent necessary to enable the defendant to respond. *Kelly v. Schmidberger*, 806 F.2d 44, 45–6 (2d Cir. 1986), *citing Liguori v. Alexander*, 495 F.Supp. 641, 647 (S.D.N.Y.1980) (providing that the complaint must at least give the defendant sufficient notice of the statements complained of to enable the defendant to mount a defense). It is for this reason that "the pleading of additional evidence is not only unnecessary, but in contravention of proper pleading procedure. Such additional information is now available through the liberalized discovery provisions." *Geisler v. Petrocelli, supra.* Applying this standard to the Amended Counterclaim, the allegations constituting Count VI satisfy this standard.

According to the Amended Counterclaim, Mr. H. Cohen sent at least two e-mails to PPG, falsely accusing the EDAN and PAAS that they are in breach of contract. *See* Amended Counterclaim, ¶77-78. The Amended Counterclaim goes on to allege that "upon information and belief, Hananya sent numerous e-mails to representatives of PPG, the content of which

significantly disparaged EDAN and PAAS and cast them as liars, fraudsters and similar like terms." *Id.*, ¶¶80. 121. Under New York law, publications imputing dishonesty and fraud are actionable. *Grimaldi v. Schillaci*, 106 A.D.2d 728, 729–30 (N.Y. App. Div. 1984) ("Words are libelous without allegations of special damages if they affect a person in his profession, trade, or business, by imputing to him any kind of fraud, dishonesty, misconduct, incapacity, unfitness or want of any necessary qualification in the exercise thereof.").

Contrary to ADYB's challenge, libel claims premised on "information and belief" allegations can survive a motion to dismiss "where the facts are peculiarly within the possession and control of the defendant," or "where the belief is based on factual information that makes the inference of culpability plausible." *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010); *See also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

Here, the content of the e-mails sent by Mr. H. Cohen are within his control. Moreover, the belief is based on factual information – *i.e.* Mr. H. Cohen's e-mails to PPG representatives – that makes the inference of libel content highly plausible, especially considering the circumstances.

Also contrary to ADYB's argument, the Amended Counterclaim specifically alleges the content of the statements (*Id.*, ¶¶80, 121), when and how they were made and who made them. *Id.* Notably, a defamation claim need not allege the exact words that were used by the defendant. *See Cooper v. City of Chester, supra* ("[A] defamation plaintiff does not have to plead the precise defamatory statements") (internal citations omitted).

All in all, the Amended Counterclaim sets forth an allegation that entitles EDAN and PAAS – at the very least – to further investigate the matter through discovery.[9] Bell Atlantic Corp. v. Twombly, *supra*, at 556.

Considering the above, EDAN and PAAS's libel claim against ADYB and Mr. H. Cohen satisfies Rule 8 of the FRCP and should not be dismissed.

**F. The Declaratory Relief should not be Dismissed**

ADYB's challenge against Count IX is misplaced. Declaratory relief in this proceeding is essential. While certain sections of Count IX are arguably parallel the other causes of action, other sections are not. Subsections (h), (i) and (e) will not and cannot be resolved under the other Counts of the Amended Counterclaim. For example, Counterclaim Plaintiffs request a declaration "that EDAN is the rightful assignee of Patents '876, '621, and '363, now and in the future." Amended Counterclaim, ¶139(h). The issue of rightful ownership will not be resolved under any of the other Counts. Count I (breach of contract) will address whether Mr. H. Cohen was entitled to invoke the milestone provision or not. However, as alleged, notwithstanding the milestone provision in the Investment Agreement, Mr. H. Cohen and ADYB are estopped from now claiming ownership of the patents. *See, for example,* Amended Counterclaim, ¶11; Amended Answer, Second Affirmative Defense. The relief sought for this claim is independent and extraneous of Count I and can only be remedied via a declaratory judgment. The same is true with subsections (i) and (e).

---

[9] During discovery, ADYB produced documents that further support the defamation claim. For example, a document bates stamped "ADYB 8274", contains defamatory material. The document is marked "confidential" and is therefore not attached to this Opposition. Should the Court so instruct, the document may be filed under seal.

These types of post-pleading discoveries are the basis for the flexible and liberal pleading requirements adopted by, among others, Bell Atlantic Corp. v. Twombly. It is for this reason the defamation claim should not be dismissed.

Accordingly, at least as to those sub-sections, the relief sought in Count IX is not duplicative and should not be dismissed.

## III. CONCLUSION

In light of the above, Defendants/Counterclaim Plaintiffs respectfully request that this Court enter an order denying ADYB's motion to dismiss in its entirety.

Dated: May 21, 2020

JEFFREY E. MICHELS

Jeffrey E. Michels, Esq.
Noam B. Schreiber, Esq.
Zell & Associates International Advocates LLC
*Attorneys for the Defendants and Counterclaim Plaintiffs*
14 Penn Plaza
225 West 34th Street, 9th Floor
New York, New York, 10122
Telephone: (212) 971-1349
Facsimile: (212) 253-4030
Email:jmichels@fandz.com,
Schreiber.noam@gmail.com