UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ADYB ENGINEERED FOR LIFE, INC., | |
| Plaintiff, | |
| -against- | 1:19-cv-7800-MKV |
| EDAN ADMINISTRATION SERVICES LTD. and POM ADVANCED ARMOR SOLUTIONS LLC, | MEMORANDUM OPINION AND ORDER |
| Defendants. | |

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:__3/29/2021__

MARY KAY VYSKOCIL, United States District Judge:

Plaintiff ADYB Engineered For Life, Inc. ("ADYB") brings this action against Defendants Edan Administration Services (Ireland) Ltd. ("EDAN") and Pom Advanced Armor Solutions LLC ("PAAS") alleging breach of contract, conversion, and abuse of process. [ECF No. 45.] EDAN and PAAS answered and, together with nonparty Edwin Cohen ("E. Cohen"), EDAN's owner, asserted counterclaims against ADYB and its owner and CEO, Hananya Cohen ("H. Cohen"). [ECF No. 49.]

There are four motions before the Court. *First*, EDAN and PAAS have moved to join E. Cohen (as counterclaim plaintiff) and H. Cohen (as counterclaim defendant) as necessary or, alternatively, permissive parties pursuant to Federal Rules of Civil Procedure 13(h), 19, and 20. [ECF No. 93.] *Second*, H. Cohen has moved to dismiss the counterclaims against him, pursuant to Rules 12(b)(4) and 12(b)(5), for insufficient process and service of process. [ECF No. 91.] *Third*, ADYB has moved to dismiss the tort and declaratory relief counterclaims against it pursuant to Rule 12(b)(6). [ECF No. 65.] *Fourth*, EDAN and PAAS have moved for leave to file a second amended answer and counterclaim, pursuant to Rule 15(a)(2), to add a counterclaim for fraudulent conveyance against H. Cohen. [ECF No. 130.]

For the reasons discussed below, (1) the motion to join H. Cohen and E. Cohen is GRANTED; (2) H. Cohen's motion to dismiss is DENIED without prejudice; (3) ADYB's motion to dismiss is GRANTED IN PART and DENIED IN PART; and (4) the motion for leave to amend is DENIED.

## I.

## BACKGROUND

### A. *Factual Background*[1]

Nearly a decade ago, ADYB entered into a contract (the "Investment Agreement") with EDAN (formerly known as NEWCO) and E. Cohen, as owner and a representative of EDAN, relating to the development of body-armor technology developed by H. Cohen, the owner and CEO of ADYB. [ECF No. 49 ¶¶ 15, 20, 26.] Under the Investment Agreement, E. Cohen committed to invest $250,000 in ADYB in exchange for a twenty-percent interest in the company. [*Id.* ¶ 21.]

The Investment Agreement provides for H. Cohen to transfer the rights to his armor-related patents to ADYB upon receipt of the first of two investment payments from E. Cohen. [*Id.* ¶ 22.] Upon receipt of the second payment, ADYB would license the patents to EDAN. [*Id.* ¶ 24.] The Investment Agreement gives EDAN the right to "produce and market the current and future technology of ADYB." [*Id.* ¶ 24.] The Investment Agreement provides that ADYB and H. Cohen shall "support the marketing and sales efforts" of EDAN. [*Id.* ¶ 28.] Under the terms of the Investment Agreement, EDAN is subject to benchmarks, or milestones, limiting its rights under

---

[1] The following facts are adduced from the first amended answer and counterclaim. [ECF No. 49.] For purposes of ADYB's 12(b)(6) motion, the Court accepts as true the factual allegations in the first amended counterclaim and draws all reasonable inferences in favor of EDAN and PAAS. *Oakley v. Dolan*, 980 F.3d 279, 283 (2d Cir. 2020); *CBF Indústria de Gusa S/A v. AMCI Holdings, Inc.*, 850 F.3d 58, 77 (2d Cir. 2017); *Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 154 (2d Cir. 2006). For purposes of resolving the 12(b)(6) motion, the Court considers only the allegations in the first amended counterclaim. With respect to the other motions, the Court considers matters outside the pleadings where appropriate.

its license if the technology was certified at certain performance levels by the National Institute for Justice ("NIJ"), an agency of the U.S. Department of Justice.  [*Id.* ¶ 25.]  Initial testing of the armor-related technology was promising, but did not satisfy the performance levels necessary to be certified by NIJ.  [*Id.* ¶ 30.]

As a result of the promising test results, EDAN, ADYB, and H. Cohen executed two new agreements, or memoranda of understanding.  [*Id.* ¶ 31.]  Pursuant to the first ("MOU-1"), H. Cohen assigned the patents to EDAN for "strategic reasons" to assist EDAN in soliciting additional investments.  [*Id.* ¶ 33.]  Pursuant to the second ("MOU-2"), ADYB assigned ownership of its physical and intellectual property to EDAN.  [*Id.* ¶ 37.]

Over the next two years, ADYB and EDAN worked together to develop the technology. [*Id.* ¶¶ 39, 43.]  EDAN paid H. Cohen a monthly salary of $2,000 to $3,000 per month, despite the contracts not calling for such payments.  [*Id.* ¶¶ 40, 50.]

During this time, EDAN began exploring a potential business relationship with PPG Industries, Inc. ("PPG"), which was interested in using the patented technology for armored vehicles.  [*Id.* ¶¶ 46–47.]  EDAN alleges that H. Cohen knew that an ownership dispute over the patents would ruin the potential business relationship between EDAN and PPG.  [*Id.* ¶ 49.]  He demanded that EDAN increase his monthly payments from $3,000 to $8,000.  [*Id.* ¶¶ 49, 50.]  Fearing that H. Cohen would destroy the potential deal with PPG, EDAN gave in to his demands. [*Id.* ¶ 50.]

EDAN, through its wholly owned subsidiary PAAS, entered into a two-year license agreement with PPG (the "PAAS-PPG License Agreement"), under which PAAS would earn royalties from PPG's sales of licensed products.  [*Id.* ¶¶ 52–53 & n.5.]  PPG was later awarded a contract from the United States Tank Automotive Research, Development and Engineering Center

("TARDEC") to study and develop the licensed products.  [*Id.* ¶ 55.]  EDAN and PAAS projected

that the TARDEC relationship could provide over $100 million in revenue by 2030.  [*Id.* ¶ 57.]

As the PAAS-PPG relationship formed, E. Cohen and H. Cohen realized that the initial

benchmarks in the Investment Agreement, though never triggered because the armor-related

technology was not certified by NIJ, risked chilling prospective investors.  [*Id.* ¶ 59.]  H. Cohen

represented to E. Cohen that he would agree to remove the benchmarks and cooperate with the

PPG deal.  [*Id.* ¶¶ 61–62.]  Specifically, H. Cohen orally agreed in principle to enter into a new

business relationship with no benchmark provision.  [*Id.* ¶ 62.]  But when sent a proposed written

agreement to memorialize the arrangement, H. Cohen declined to sign it, responding that "[t]rust

and good faith should be enough."  [*Id.* ¶ 66.]

Thereafter, H. Cohen threatened to pull the plug on the parties' business arrangements if

EDAN did not increase his monthly payments to $16,000.  [*Id.* ¶ 67.]  Afraid that he would act on

his threats and given his representations that he would not interfere with the PAAS-PPG License

Agreement, EDAN increased H. Cohen's monthly payments.  [*Id.* ¶ 68.]  Despite receiving the

increased payments, H. Cohen refused to revise the original Investment Agreement.  [*Id.* ¶ 69.]

Amid all of this, in September 2017, H. Cohen filed documents with the United States

Patent and Trademark Office ("USPTO") claiming EDAN breached its agreements with him, he

had revoked his assignments to EDAN under MOU-1, and ADYB was now the assignee of his

patents.  [*Id.* ¶ 71.]  EDAN and PAAS did not learn of these filings with the USPTO until several

months later.  [*Id.*]  In the interim, they transmitted several monthly payments to H. Cohen under

the belief that the PPG deal would continue uninterrupted.  [*Id.* ¶ 72.]

Approximately one year after filing the documents with the USPTO, H. Cohen wrote to

PPG claiming that PAAS "no longer holds a marketing license for my patents" and requested

confirmation that PPG was no longer marketing his patents.  [*Id.* ¶ 77.]  H. Cohen also sent

numerous disparaging e-mails to PPG representatives, calling EDAN and PAAS liars, fraudsters, and like terms.  [*Id.* ¶ 80.]  H. Cohen continued to assert to PPG that EDAN breached the Investment Agreement.  [*Id.* ¶ 78.]  At one point, H. Cohen approached PPG to inquire whether it would be interested in a deal with ADYB to the exclusion of EDAN and PAAS.  [*Id.* ¶ 82.]

**B.  *Procedural Background***

In May 2019, EDAN, PAAS, and E. Cohen sued ADYB and H. Cohen in the Southern District of New York invoking the Court's diversity jurisdiction and seeking a preliminary injunction to stop H. Cohen from further damaging the relationship with PPG.  [ECF No. 95-3 ¶ 3.]  Compl., *Edan Admin. Servs. Ltd. v. Cohen*, 1:19-cv-05051 (S.D.N.Y. May 30, 2019) (Caproni, *J.*), ECF No. 1; Mot. Prelim. Inj., *Edan Admin. Servs.*, 1:19-cv-05051 (S.D.N.Y. May 31, 2019), ECF No. 4.  At the preliminary injunction hearing, EDAN, PAAS, and E. Cohen voluntarily dismissed H. Cohen from the case without prejudice upon learning that his citizenship status—a U.S. citizen domiciled abroad and therefore a citizen of no state for diversity purposes— would destroy subject matter jurisdiction.  [ECF No. 95-3 ¶ 5.]  Order, *Edan Admin. Servs.*, 1:19-cv-05051 (S.D.N.Y. July 10, 2019), ECF No. 32.  Shortly after their motion for a preliminary injunction was denied, EDAN, PAAS, and E. Cohen voluntarily dismissed the action without prejudice.  [ECF No. 95-3 ¶ 6.]  Notice of Voluntary Dismissal, *Edan Admin. Servs.*, 1:19-cv-05051 (S.D.N.Y. July 23, 2019), ECF No. 33.

EDAN, PAAS, and E. Cohen prepared to file a lawsuit against H. Cohen in Israel, but, in the interim, ADYB commenced this action against EDAN and PAAS in August 2019.  [ECF No. 95-3 ¶¶ 6, 8–9.]  ADYB asserted claims against EDAN and PAAS for breach of contract, conversion, and abuse of process.  [ECF No. 1.]  In November 2019, EDAN and PAAS answered and asserted several counterclaims against ADYB and H. Cohen, jointly and severally [*see generally* ECF No. 23], noting that they intended to move to add H. Cohen as a party pursuant to

5

Federal Rule of Civil Procedure 13(h) [*id.* at 8 n.1].  In December 2019, the Court (Schofield, *J.*) entered a Case Management Plan and the parties began discovery.  [ECF No. 36.]

Shortly thereafter, ADYB filed an amended complaint asserting the same three claims against EDAN and PAAS.  [ECF No. 45.]  EDAN and PAAS filed an amended answered and, together with E. Cohen, asserted counterclaims against ADYB and H. Cohen, jointly and severally, for breach of contract, several torts, and declaratory relief.  [ECF No. 49 ¶¶ 86–125, 138–39.]  In addition, E. Cohen independently asserted claims against ADYB and H. Cohen, jointly and severally, for breach of contract and unjust enrichment.  [*Id.* ¶¶ 126–37.]

After ADYB answered the counterclaims, Judge Schofield ordered EDAN and PAAS to "file a proof of service of the amended counterclaims on Mr. H. Cohen" and to file a letter setting forth the legal grounds for joining H. Cohen as a counterclaim defendant and E. Cohen as a counterclaim plaintiff.  [ECF No. 54 at 3.]  H. Cohen was directed to file a response letter within twenty-one days of service of the amended counterclaims.  [*Id.*]

Several attempts by EDAN and PAAS to request a summons for H. Cohen were rejected by the Clerk of Court.  [ECF No. 55–58.]  The Clerk noted on the docket that the requests were "deficient" because "a summons cannot be requested for parties that are not part of this case."

The case was then reassigned to me.  Shortly thereafter, the Court held a pre-motion conference and set briefing schedules for the parties' anticipated motions.  [ECF No. 92.]  Pursuant to Judge Schofield's rulings, the parties filed the motion to join parties and the motions to dismiss.[2] EDAN and PAAS later filed a letter seeking leave to amend.  [ECF No. 130.]

---

[2] In connection with the motion to join H. Cohen and E. Cohen, the parties filed memoranda of law [ECF Nos. 95, 102–03], copies of the Investment Agreement [ECF No. 95-1] and MOU-1 [ECF No. 95-2], and declarations of Danny Turetsky [ECF No. 95-3] and Jeffery Michels [ECF No. 103-1]. In connection with H. Cohen's motion to dismiss, the parties filed memoranda of law [ECF Nos. 91, 100, 105] and a declaration of Jeffery Michels [ECF No. 100-1]. In connection with ADYB's motion to dismiss, the parties submitted memoranda of law [ECF Nos. 66, 107, 110] and a declaration of Antoanteta V. Tarpanova [ECF No. 111].

## II.

### MOTION TO JOIN H. COHEN AND E. COHEN

EDAN and PAAS move for necessary or, alternatively, permissive joinder of H. Cohen and E. Cohen.  EDAN, PAAS, and ADYB briefed joinder of H. Cohen and E. Cohen with respect to all counterclaims.  [*See generally* ECF Nos. 95, 102–03.]  "Once parties are properly joined under [Rules 13, 19, or 20] as to a particular claim, additional claims, whether they are related or unrelated or they are by or against all or less than all of the parties may be joined under Rule 18(a)."  6A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1585, Westlaw (database updated Oct. 2020) [hereinafter Wright & Miller].  Thus, in order to be proper, H. Cohen and E. Cohen need only properly be joined as parties under one cause of action.  *See Trainum v. Rockwell Collins, Inc.*, No. 16-cv-7005 (JSR), 2017 WL 1093986, at *3 (S.D.N.Y. Mar. 9, 2017); *Superior Performers, Inc. v. Ewing*, No. 1:14cv232, 2015 WL 790371, at *3 n.2 (M.D.N.C. Feb. 25, 2015).  If proper, once joined as parties, E. Cohen can assert additional claims and H. Cohen is exposed to suit under additional claims, subject to jurisdictional constraints.

The Court analyzes joinder of H. Cohen and E. Cohen as necessary parties with respect to the counterclaim for breach of contract since that counterclaim is not contested by any party under Rule 12(b)(6).  Rule 13(h) provides that "Rules 19 and 20 govern the addition of a person as a party to a counterclaim or crossclaim."  Fed. R. Civ. P. 13(h).  "Rule 13(h) only authorizes the court to join additional persons in order to adjudicate a counterclaim or cross-claim that already is before the court or one that is being asserted at the same time the addition of a nonparty is sought."  *F.D.I.C. v. Bathgate*, 27 F.3d 850, 873 (3d Cir. 1994).  Rule 13(h) is the proper vehicle to join H. Cohen and E. Cohen because the counterclaims are being asserted at the same time that their joinder is sought.  *See, e.g.*, *Grupo Dataflux v. Atlas Global Grp., L.P.*, 541 U.S. 567, 580 n.9

7

(2004) (alteration and internal quotation marks omitted) (noting that Rule 13(h) "applies only to persons other than those made parties to the original action"); *Westwood Apex v. Contreras*, 644 F.3d 799, 802 n.1 (9th Cir. 2011); *Stonecoat of Tex., LLC v. ProCal Stone Design, LLC*, No. 4:17-cv-00303, 2018 WL 11176237, at *11 (E.D. Tex. Nov. 9, 2019) (collecting cases).

Rule 19 governs required joinder of parties.  Fed. R. Civ. P. 19.  Joinder of a party under Rule 19 entails a two-step analysis, pursuant to which the Court considers (1) whether the absent party belongs in the suit, *i.e.*, qualifies as a "necessary" party under Rule 19(a), and (2) whether joinder of the absent party is feasible and will not deprive the Court of subject matter jurisdiction. *Viacom Int'l, Inc. v. Kearney*, 212 F.3d 721, 724–25 (2d Cir. 2000).

Under the first step of the Rule 19 analysis, a party is necessary to an action when:

> (A) in that person's absence, the court cannot accord complete relief among existing parties; or
>
> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>
>> (i) as a practical matter impair or impede the person's ability to protect the interest; or
>>
>> (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a)(1).

Generally, a party to a contract that is the subject of the litigation is a necessary party. *Sunset Homeowners Ass'n, Inc. v. DiFrancesco*, 386 F. Supp. 3d 299, 304–05 (W.D.N.Y. 2019) (collecting cases); *Ryan v. Volpone Stamp Co., Inc.*, 107 F. Supp. 2d 369, 387 (S.D.N.Y. 2000) (collecting cases); *see Global Detection & Reporting, Inc., v. Securetec Detektions–Systeme AG*, No. 08 Civ. 5411(GEL), 2008 WL 5054728, at *1 (S.D.N.Y. 2008).  Conversely, "A nonparty to a commercial contract ordinarily is not a necessary party to an adjudication of rights under the

contract." *ConnTech Dev. Co. v. Univ. of Conn. Educ. Props., Inc.*, 102 F.3d 677, 682 (2d Cir. 1996) (quoting *Northrop Corp. v. McDonnell Douglas Corp.*, 705 F.2d 1030, 1044 (9th Cir. 1983)).

These propositions are "descriptive not prescriptive." *Gibbs Wire & Steel Co., Inc. v. Johnson*, 255 F.R.D. 326, 330–31 (D. Conn. 2009) (citing *Jonesfilm v. Lion Gate Int'l*, 299 F.3d 134, 141 (2d Cir. 2002)). "Courts have repeatedly cautioned . . . that the Rule 19 inquiry is a fact specific and practical one, which should not be based on formalistic or mechanistic grounds but rather on pragmatic analysis of the effect of a potential party's absence." *Polargrid LLC v. Videsh Sanchar Nigam Ltd.*, No. 04 CV 9578(TPG), 2006 WL 2266351, at *9 (S.D.N.Y. Aug. 7, 2006) (internal quotation marks omitted) (collecting cases).

The party moving for joinder under Rule 19 bears the burden of demonstrating that joinder is appropriate. *Atl. Mut. Ins. Co. v. Polar Air Cargo, Ltd.*, No. 99 CIV 3176LAP JCF, 2000 WL 45706, at *2 (S.D.N.Y. Jan. 20, 2000) (collecting cases); *accord Errico v. Stryker Corp.*, No. 10 Civ. 3960(VM)(JLC), 2010 WL 5174361, at *2 (S.D.N.Y. Dec. 14, 2010). In making Rule 19 determinations, district courts have "broad discretion" and may consider matters outside the pleadings. *Rahman v. Shiv Darshan, Inc.*, No. 12 Civ. 3457(ILG)(CLP), 2013 WL 654189, at *5 (E.D.N.Y. Feb. 22, 2013) (quoting *Cont'l Kraft Corp. v. Euro–Asia Dev. Grp., Inc.*, No. 97 CV 0619, 1997 WL 642350, at *6 (E.D.N.Y. Sept. 8, 1997)); *see Holland v. Fahnestock & Co., Inc.*, 210 F.R.D. 487, 495 (S.D.N.Y. 2002) (collecting cases).

**A.  *Step One: Whether H. Cohen and E. Cohen Are Necessary Parties to This Action***

### 1.  H. Cohen Is a Necessary Party

EDAN and PAAS argue that H. Cohen is a necessary party because he is a party to the Investment Agreement and MOU-1. [ECF No. 95 at 13.] ADYB argues that H. Cohen is not a party to the Investment Agreement "because he owed no performances thereunder." [ECF No.

102 at 16.]  ADYB concedes that H. Cohen is a party to MOU-1, but argues that under MOU-1, any personal interest he had in the patents were assigned to EDAN and would have reverted to ADYB upon EDAN's alleged breach of the Investment Agreement.  [*Id.* at 16–17.]

The Investment Agreement is signed by (1) H. Cohen personally, (2) "ADYB represented by [H.] Cohen," (3) E. Cohen personally, and (4) "[EDAN] represented by [E.] Cohen."  [ECF No. 148 at 22–26.][3]  Under New York law, an agent who signs an agreement on behalf of a disclosed principal may be individually bound where "there is clear and explicit evidence of the agent's intention to substitute or superadd his personal liability for, or to, that of his principal."  *Cement & Concrete Workers Dist. Council Welfare Fund v. Lollo*, 35 F.3d 29, 35 (2d Cir. 1994) (quoting *Lerner v. Amalgamated Clothing & Textile Workers Union*, 938 F.2d 2, 5 (2d Cir. 1991)).  Factors courts consider in assessing the signatory's intention include, *inter alia*, the length of the contract, the presence of the signatory's name in the contract, and the signatory's role in the company.  *Id.* (citing *Lerner*, 938 F.2d at 5); *see also Raymond Weil, S.A. v. Theron*, 585 F. Supp. 2d 473, 482 (S.D.N.Y. 2008).[4]

On the limited record before the Court, EDAN and PAAS have sufficiently shown that H. Cohen is a party to the Investment Agreement such that he may properly be joined as a party defendant on the counterclaim.  "The most obvious indicator of intent is the form of the signature."  *Israel v. Chabra*, 537 F.3d 86, 97 (2d Cir. 2008).  As noted, the signature section of the Investment

---

[3] In connection with this motion, EDAN and PAAS submitted a version of the Investment Agreement that was not fully executed. [ECF No. 95-1]. ADYB did not challenge the validity or enforceability of the Investment Agreement. Indeed, it brings claims under the Investment Agreement. ADYB subsequently submitted a fully executed version of the Investment Agreement. [ECF No. 148 at 22–26.]

[4] Additional factors include "the location of the liability provision(s) in relation to the signature line" and "the nature of the negotiations leading to the contract." *Lollo*, 35 F.3d at 35 (citing *Lerner*, 938 F.2d at 5). These additional factors offer no guidance here because there are no "liability provisions" in the Investment Agreement expressly imposing personal liability on the signatories and the parties have submitted no evidence with respect to negotiations leading to the contract. *See TR 39th St. Land Corp. v. Salsa Distribution USA, LLC*, No. 11 Civ. 7193(DF), 2013 WL 3090441, at *8 (S.D.N.Y. June 18, 2013) (noting inability to assign weight to certain factors when pleadings were silent on those matters).

Agreement provides, "Signed, agreed and entered into by," followed by signature lines for both "ADYB represented by [H.] Cohen" *and H. Cohen personally*.  [ECF No. 95-1 at 4–5.]  This factor weighs strongly in favor of personal liability.  *See, e.g.*, *Salzman*, 10 N.Y.2d at 67 (noting that "where individual responsibility is demanded the nearly universal practice is that the officer signs twice—once as an officer and again as an individual"); *cf. Mason Tenders Dist. Council Welfare Fund v. Thomsen Constr. Co.*, 301 F.3d 50, 54 (2d Cir. 2002) (noting that appearance of only one signature suggests no personal liability).

Other factors support the conclusion that H. Cohen is a necessary party as a party to the Investment Agreement.  The contract is only five pages in length, one of which is exclusively signature lines.  [ECF No. 95-1.]  The short length of a contract generally weighs in favor of personal liability.  *See, e.g.*, *Paribas Props., Inc. v. Benson*, 146 A.D.2d 522, 525–26, 536 N.Y.S.2d 1007 (1st Dep't 1989); *see also, e.g.*, *Integrated Mktg. & Promotional Sols., Inc. v. JEC Nutrition, LLC*, No. 06 Civ. 5640(JFK), 2006 WL 3627753, at *5 (S.D.N.Y. Dec. 12, 2006) (alterations in original) (noting that a seven-page contract "does not present the 'great danger [of] allowing a single sentence in a long contract to bind individually a person who sign[ed] only as a corporate officer'" (quoting *Salzman Sign Co. v. Beck*, 10 N.Y.2d 63, 67, 176 N.E.2d 74, 217 N.Y.S.2d 55 (1961))).  However, some courts have noted that the page length of the contract "matters only insofar as the length makes it more or less probable that the individual signatory was aware of the provision imposing personal liability."  *Shld, LLC v. Hall*, No. 15 Civ. 6225 (LLS), 2017 WL 1428864, at *5 (S.D.N.Y. Apr. 20, 2017) (collecting cases).  Because there is no express provision regarding personal liability, the Court assigns little weight to this factor.

Another "factor on which New York courts have relied in finding intent to be personally bound is that the signatory was the president and principal shareholder in the corporation."  *JEC Nutrition*, 2006 WL 3627753, at *6 (alteration omitted) (quoting *Lehman Bros., Inc. v. Tutelar*

*CIA Financiera, S.A.*, No. 95 CIV. 3772 (DLC), 1997 WL 403463, at *3 (S.D.N.Y. July 17, 1997)).

Here, H. Cohen is the owner and chief executive officer of ADYB who exercised extensive control

over the company.  [ECF No. 49 ¶ 15; ECF No. 45 ¶ 8.]  Accordingly, this factor also weighs in

favor of personal liability.  *See, e.g.*, *Porter v. Prop. Damage Control Grp., PDC*, No. 03 CV 5972,

2007 WL 2907403 at *9 (E.D.N.Y. Sept. 28, 2007) (finding that president and sole shareholder's

pivotal role in corporation indicated intent to be bound personally); *JEC Nutrition*, 2006 WL

3627753, at *6 (finding that officer's "position of prominence and control in his company weighs

in favor of finding that he intended to be bound by the personal guarantee clause").

An additional factor courts have considered in determining whether an agent is a party to

a contract is whether the agent is granted rights under the agreement.  In *Ryan*, the court held that

an agent of Hall of Fame baseball pitcher Nolan Ryan was a necessary party under Rule 19(a)

because, even though the agent was not listed as a licensee, it was "directly granted at least one

right under the agreement."  107 F. Supp. 2d at 390.  Here, H. Cohen has rights *and* obligations

under the contract.  The Investment Agreement provides that H. Cohen has a seventy-five-percent

ownership interest in ADYB and that the patents "owned by [ADYB] and its principles" will be

licensed to EDAN.  [ECF No. 95-2 at 1, 4.]  ADYB concedes that "[u]nder the Investment

Agreement H. Cohen had the obligation to assign his rights to the patents."  [ECF No. 102 at 2.]

The Investment Agreement also entitles H. Cohen to a seven-percent equity interest in EDAN.

[ECF No. 95-2 at 4.]  These rights and obligations further suggest "a contrary intention" that H.

Cohen did not sign the Investment Agreement merely as an agent of ADYB and that he may be

held liable as a party thereto.  *See Ryan*, 107 F. Supp. 2d at 390 ("Although this may be a case

where poor drafting has disguised the parties' true intentions and Plaintiff may ultimately prove

that Mattgo is not a party to the licensing agreements, on the present record a reasonable jury could

find that Mattgo did obligate itself in addition to Ryan.").

Accordingly, on the record before it, the Court concludes that EDAN and PAAS have met their burden to show that H. Cohen is a necessary party as a party to the Investment Agreement.

## 2. E. Cohen Is a Necessary Party

It is undisputed that E. Cohen is a party to the Investment Agreement and MOU-1, which strongly suggests that he is a necessary party to the counterclaim for breach of those agreements. *See Sunset Homeowners Ass'n*, 386 F. Supp. 3d at 304–05 (collecting cases); *Ryan*, 107 F. Supp. 2d at 387 (collecting cases). Yet ADYB argues that the share disputes between E. Cohen and H. Cohen "has nothing to do with the outcome of any moneys owned by EDAN to ADYB or with ADYB's rights to own the patents." [ECF No. 102 at 7.]

ADYB may be right in this assertion, but it ignores that E. Cohen has rights and obligations as a signatory to the contracts and his rights are properly redressed by a counterclaim to which he is a party. The Second Circuit has held that "[i]f the resolution of a plaintiff's claim would require the definition of a non-party's rights under a contract, it is likely that the non-party is necessary under Rule 19(a)." *Jonesfilm*, 299 F.3d at 141 (citing *Peregrine Myanmar Ltd. v. Segal*, 89 F.3d 41, 48 (2d Cir. 1996)). Here, resolution of the existing parties' claims—specifically, the issue of whether the ballistics test was satisfactory and triggered the benchmarks—would define E. Cohen's rights under the Investment Agreement, specifically his ownership interest in ADYB. Pursuant to the Investment Agreement, "[a]t the time of the Initial Investment [E. Cohen] shall receive 20% interest in [ADYB]." [ECF No. 95-1 at 2.] E. Cohen's "subsequent investment" was conditioned on satisfactory test results. [*Id.* at 1–2.] E. Cohen's failure to transmit the subsequent investment would result in him "returning 17.50% equity interest of [ADYB] to the original shareholders of [ADYB], thereby remaining with only 2.50% equity interest in [ADYB]." [*Id.* at 2.]

E. Cohen's obligation to transmit the subsequent investment payment and the extent of any ownership interest he has or may have in ADYB hinges on whether the ballistic test qualified as "satisfactory performance" under the Investment Agreement—a central issue to the existing parties' breach of contract claims.   [*Compare* ECF No. 45 ¶ 28 (alleging tests were not satisfactory), *with* ECF No. 49 ¶ 30 (alleging tests were satisfactory).]   A favorable ruling for ADYB on this issue "could have an adverse precedential effect on any subsequent claims by [E. Cohen]" regarding his ownership interest.   *Spiro v. Parker Bros.*, No. 91 Civ. 7759 (JFK), 1992 WL 197405, at *1 (S.D.N.Y. Aug. 4, 1992); *see Smith v. Kessner*, 183 F.R.D. 373, 375 (S.D.N.Y. 1998) (finding that co-investor was necessary party because it could "bring a separate and independent claim based upon the same facts and allegations asserted in the present action and seeking essentially the same damages," potentially subjecting defendants to multiple obligations on the same claim).   Accordingly, E. Cohen, "as a party to the underlying contract, is a necessary party, and should be joined so [he] can assert [his] defenses and claims . . . relating to the matters in suit."   *Delcon Constr. Corp. v. U.S. Dep't of Hous. & Urban Dev.*, 205 F.R.D. 145, 147 (S.D.N.Y. 2002) (citing *Global Discount Travel Servs., LLC v. Trans World Airlines, Inc.*, 960 F. Supp. 701, 708 (S.D.N.Y. 1997)).

In addition, EDAN and PAAS allege that E. Cohen is a co-inventor of one of the patents, as asserted in their fifth and sixth affirmative defenses.   [ECF No. 49 at 6.]   Thus, given his alleged ownership interest, failure to join E. Cohen would prevent the Court from according complete declaratory relief with respect to ownership of that patent.   *See* Fed. R. Civ. P. 19(a)(1); *cf. Transmirra Prods. Corp. v. Monsanto Chem. Co.*, 186 F. Supp. 270, 271 (S.D.N.Y. 1960) (granting motion under Rule 13(h) because nonparty's "role as inventor of the patent and president and substantial stockholder of the plaintiff corporation" made his presence "required for the

granting of complete relief in the determination of (the) counterclaim"). Accordingly, the Court finds that E. Cohen is a necessary party.

**B.** ***Step Two: Whether Joinder of H. Cohen and E. Cohen Is Feasible: Personal Jurisdiction and Subject Matter Jurisdiction***

Having concluded that H. Cohen and E. Cohen are necessary parties, the Court moves to the second step of the Rule 19 analysis: whether joinder is feasible—that is, whether H. Cohen and E. Cohen are subject to service, or personal jurisdiction, and their joinder will not deprive the Court of subject matter jurisdiction.

**1. <u>Personal Jurisdiction</u>**

**(a) Personal Jurisdiction Over E. Cohen**

As an initial matter, E. Cohen has voluntarily subjected himself to the personal jurisdiction of the Court for purposes of this litigation. *See Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 625 (2d Cir. 2016) (alteration in original) (noting that "the requirement of personal jurisdiction represents first of all an individual right, [and therefore] it can, like other such rights, be waived" (quoting *Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 703 (1982))). Accordingly, the Court need only consider whether it has personal jurisdiction over H. Cohen.

**(b) Personal Jurisdiction Over H. Cohen**

ADYB argues that EDAN and PAAS fail to allege a basis for personal jurisdiction over H. Cohen, individually, since they do not specify whether H. Cohen was acting in a personal capacity or on behalf of ADYB. [ECF No. 102 at 14–16.] This argument is unavailing. The Court has personal jurisdiction over H. Cohen personally or, alternatively, as the principal of ADYB under an agency theory.

Evaluating personal jurisdiction entails a two-stage analysis. *See Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 305 F.3d 120, 124 (2d Cir. 2002). First, the Court must analyze

whether the law of the state—here, New York's long-arm statute, N.Y. C.P.L.R. § 302—subjects the individual to jurisdiction. *Id.* Second, the Court must evaluate whether the exercise of jurisdiction would comport with constitutional due process protections. *Id.*; *see also Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014); *Friedman v. Bloomberg L.P.*, 884 F.3d 83, 90 (2d Cir. 2017).

An individual may be subject to personal jurisdiction under New York's long-arm statute if it "in person or through an agent" transacts business within the state and the asserted claims arise from that transaction. N.Y. C.P.L.R. § 302(a)(1); *see Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 246 (2d Cir. 2007); *Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp.*, 98 F.3d 25, 29 (2d Cir. 1996); *Paterno v. Laser Spine Inst.*, 24 N.Y.3d 370, 375–76, 23 N.E.3d 988, 998 N.Y.S.2d 720 (2014). The determination of whether a party has transacted business in New York is based on the totality of the circumstances. *Agency Rent A Car*, 98 F.3d at 29. The Second Circuit has outlined four nonexclusive factors that bear on this analysis:

> (i) whether the defendant has an on-going contractual relationship with a New York corporation; (ii) whether the contract was negotiated or executed in New York and whether, after executing a contract with a New York business, the defendant has visited New York for the purpose of meeting with parties to the contract regarding the relationship; (iii) what the choice-of-law clause is in any such contract; and (iv) whether the contract requires [defendants] to send notices and payments into the forum state or subjects them to supervision by the corporation in the forum state.

*Sunward Elecs., Inc. v. McDonald*, 362 F.3d 17, 22 (2d Cir. 2004) (quoting *Agency Rent A Car*, 98 F.3d at 29).

A claim "arises from" a transaction when there is a "substantial nexus between the business transacted and the cause of action sued upon." *Agency Rent A Car*, 98 F.3d at 31. In a breach of contract action, "the proper inquiry is whether looking at the totality of the defendant's activities within the forum, purposeful acts have been performed in New York by the foreign [actor] in

relation to the contract, albeit preliminary or subsequent to its execution." *Bissonnette v. Podlaski*, 138 F. Supp. 3d 616, 622–23 (S.D.N.Y. 2015) (ellipsis and alteration omitted) (quoting *Sterling Nat'l Bank & Tr. Co. of N.Y. v. Fid. Mortg. Inv.*, 510 F.2d 870, 873 (2d Cir. 1975)).

The requirements of the New York long-arm statute can also be satisfied under an agency theory.  Acts of a corporation may be attributed to an individual under an agency theory where "(1) the corporation engages in purposeful activity in the forum state that relates to the transaction underlying the lawsuit, (2) the corporation's activity was taken for the benefit of and with the knowledge and consent of the defendant, and (3) the defendant exercised some control over the purposeful activity." *Jonas v. Estate of Leven*, 116 F. Supp. 3d 314, 328 (S.D.N.Y. 2015) (citing *Kreutter v. McFadden Oil Corp.*, 71 N.Y.2d 460, 467, 527 N.Y.S.2d 195, 522 N.E.2d 40 (1988); and *H.S.W. Enters., Inc. v. Woo Lae Oak, Inc.*, 171 F. Supp. 2d 135, 145 (S.D.N.Y. 2001)); *see also Retail Software Servs. v. Lashlee*, 854 F.2d 18, 22 (2d Cir. 1988).  Central to this inquiry is "whether the out-of-state corporate officers were primary actors in the transaction in New York that gave rise to the litigation, and not merely some corporate employees who played no part in it." *Karabu Corp. v. Gitner*, 16 F. Supp. 2d 319, 323 (S.D.N.Y. 1998) (alterations, ellipsis, and internal quotation marks omitted) (quoting *Retail Software*, 854 F.2d at 22); *see also Leon v. Shmukler*, 992 F. Supp. 2d 179, 192–93 (E.D.N.Y. 2014) (requiring "facts establishing that the corporate officer was the driving force behind the New York transactions" (quoting *Rainbow Apparel Distrib. Ctr. Corp. v. Gaze U.S.A., Inc.*, 295 F.R.D. 18, 26 (E.D.N.Y. 2013))).

The exercise of jurisdiction must also comport with due process, which consists of two components: a "minimum contacts" inquiry and a "reasonableness" inquiry.  *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 60 (2d Cir. 2012) (quoting *Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 164 (2d Cir. 2010)).  Where, as here, specific jurisdiction is asserted, there must be "some act by which the defendant purposefully avails itself of the privilege

of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)); *see also Bristol-Myers Squibb Co. v. Superior Court of Cal.*, ___ U.S. ____, 137 S. Ct. 1773, 1780–81 (2017); *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). Where the requirements of New York's long-arm statute have been met, the "minimum contacts" and "reasonableness" requirements of due process often have been met as well. *See Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 170 (2d Cir. 2013); *Chatwal Hotels & Resorts LLC v. Dollywood Co.*, 90 F. Supp. 3d 97, 108 (S.D.N.Y. 2015).

Weighing the *Sunward* factors and considering the totality of the circumstances, the Court finds that H. Cohen actions satisfy the transact-business prong of the New York long-arm statute. First, as discussed above, the limited record strongly suggests that H. Cohen personally was a party to the Investment Agreement. *See supra* Section II.A.1. H. Cohen therefore had an ongoing, eight-year contractual relationship with ADYB, a New York corporation of which he was CEO and owner [ECF No. 49 ¶ 14; ECF No. 45 ¶ 2], and EDAN through its New York-based subsidiary PAAS [ECF No. 49 ¶ 13; ECF No. ¶ 4]. *See, e.g.*, *Sea Tow Servs. Int'l, Inc. v. Pontin*, 472 F. Supp. 2d 349, 359 (E.D.N.Y. 2017) (finding that decade-long "continuous, ongoing contractual relationship with [plaintiff], a New York corporation," weighed in favor of personal jurisdiction); *Serendip LLC v. Franchise Pictures LLC*, No. 00 Civ. 210 HB, 2000 WL 1277370, at *4 (S.D.N.Y. Sept. 7, 2000) (finding sufficient showing of personal jurisdiction given, *inter alia*, "ongoing contractual relationship with a New York limited liability company").

EDAN and PAAS also present evidence showing that H. Cohen made several trips to New York in connection with the business relationship under the Investment Agreement. EDAN and PAAS allege that H. Cohen worked with Craig Schwimmer, a New York-based PAAS employee, on the ballistics test and in pursuit of a deal with PPG. [ECF No. 49 ¶¶ 29, 45.] *See* Schwimmer

Decl. ¶ 3, *Edan Admin. Servs.*, 1:19-cv-05051 (S.D.N.Y. May 31, 2019), ECF No. 6 (noting assistance with ballistic testing).   They present e-mail correspondence reflecting H. Cohen organizing a meeting in New York City with Schwimmer [ECF No. 103-5 at 3], who manages the daily operations of PAAS and served as ADYB's and H. Cohen's consultant [ECF No. 45 ¶ 30(d)]. Schwimmer Decl. ¶ 1, *Edan Admin. Servs.*, 1:19-cv-05051.

In addition, EDAN and PAAS present hotel and flight reservations for H. Cohen organized and financed by EDAN that reflect at least eight trips to New York ranging from three days to two weeks.  [ECF No. 103-1 ¶ 4(e); *see* ECF No. 103-5.]  Such conduct "is quintessential transaction of business and readily meets the requirements of the New York long-arm statute."  *Mercury Pub. Affairs LLC v. Airbus Defence & Space, S.A.U.*, No. 1:19-cv-7518-MKV, 2020 WL 4926334, at *4 (S.D.N.Y. Aug. 21, 2020); *see Sunward Elecs.*, 362 F.3d at 23 (holding that Defendants transacted business in New York where they "maintained a continuous and on-going commercial relationship with Plaintiff, a New York business," and "traveled to New York on two occasions to attend . . . training programs"); *Medicrea USA, Inc. v. K2M Spine, Inc.*, No. 17 Civ. 8677 (AT), 2018 WL 3407702, at *5 (S.D.N.Y. Feb. 7, 2018) (a "handful of trips to New York" weighed in favor of personal jurisdiction); *Thorsen v. Sons of Norway*, 996 F. Supp. 2d 143, 156 (E.D.N.Y. 2014) (visits to New York in connection with business activities supported exercise of personal jurisdiction).

Third, the MOU-1, which incorporates the Investment Agreement, contains a New York choice-of-law provision.  [ECF 95-2 at 2.]  This is a "significant factor" weighing in favor of personal jurisdiction "because the parties, by so choosing, invoke the benefits and protections of New York law."  *Sunward Elecs.*, 362 F.3d at 23 (citing *CutCo Indus., Inc. v. Naughton*, 806 F.2d 361, 367 (2d Cir. 1986)); *see also JN Realty LLC v. Estate of Marvin*, 268 F. Supp. 2d 231, 237

(E.D.N.Y. 2003) (exercising personal jurisdiction given numerous contacts via telephone correspondence and in-person meetings and New York choice-of-law provision).

Furthermore, the counterclaim for breach of contract on which EDAN and PAAS seek to join H. Cohen as a defendant undoubtedly "arises from" H. Cohen's New York-based business transactions.  H. Cohen's business trips to New York were financed by EDAN.  H. Cohen also met and worked closely with Craig Schwimmer, a New York-based PAAS employee, in connection with the Investment Agreement and MOU-1.

Accordingly, based on the totality of H. Cohen's contacts with New York in connection with the contracts at issue in this case, EDAN and PAAS have made a *prima facie* showing that H. Cohen is subject to personal jurisdiction under New York's long-arm statute on the breach of contract counterclaim.  *See, e.g.*, *Hoffritz for Cutlery, Inc. v. Amajac, Ltd.*, 763 F.2d 55, 60 (2d Cir. 1985) (finding that "the totality of the circumstances surrounding defendants' activities in New York in connection with the matter giving rise to the lawsuit" reflected a "substantial nexus," including "frequent later visits to New York, and the alleged breach of the [contract]" (collecting cases)); *Assil Gem Corp. v. Greyhound Leisure Servs., Inc.*, No. 00 Civ. 0072, 2000 WL 375244, at *3 (S.D.N.Y. Apr. 11, 2000) (exercising personal jurisdiction given "the quality and nature of defendant's activities, in the aggregate," even though defendant did not maintain a physical presence, negotiate or execute contract, or meet plaintiff in connection with contract in New York).

Alternatively, the Court has personal jurisdiction over H. Cohen pursuant to the New York long-arm statute under an agency theory.  First, ADYB, a New York corporation, engaged in purposeful activity in New York through its business dealings with PAAS, EDAN's New York-based subsidiary, in connection with the contracts at issue in this case.  [ECF No. 45 ¶¶ 2, 4.]

Second, as the owner and CEO, H. Cohen personally benefitted from ADYB's business partnerships.  *See, e.g.*, *Retail Software*, 854 F.2d at 23 ("As officers, directors, and shareholders,

20

they stood to benefit from this entry into the New York market."); *Hypoxico, Inc. v. Colo. Altitude Training LLC*, No. 02 Civ. 6191(JGK), 2003 WL 21649437, at *4 (S.D.N.Y. July 14, 2003) (noting that president and sole shareholder of small limited liability company "would necessarily benefit from any sales of the infringing products in New York" (citing *Basquiat v. Kemper Snowboards*, No. 96 Civ. 0185, 1997 WL 527891, at *3 (S.D.N.Y. Aug. 25, 1997))).  In addition, the actions of ADYB were undoubtedly taken with the knowledge and consent of H. Cohen because, as described above, he personally carried them out.  *See Kinetic Instruments, Inc. v. Lares*, 802 F. Supp. 976, 984–85 (S.D.N.Y. 1992) (exercising personal jurisdiction over president and majority shareholder who was "involved in the day-to-day business operations of the corporation").

Third, given his personal involvement, his position in the company, and the company's small size (three employees) [ECF No. 102 at 16 n.5], H. Cohen exercised sufficient control over the New York activities.  *See In re Sumitomo Copper Litig.*, 120 F. Supp. 2d 328, 337 (S.D.N.Y. 2000); *see also Anna Sui Corp. v. Forever 21, Inc.*, No. 07 Civ. 3235(TPG), 2008 WL 4386747, at *3 (S.D.N.Y. Sept. 25, 2008). There clearly is an "articulable nexus between the business transacted and the cause of action sued upon."  *Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*, 450 F.3d 100, 103 (2d Cir. 2006) (quoting *McGowan v. Smith*, 52 N.Y.2d 268, 272, 437 N.Y.S.2d 643, 419 N.E.2d 321 (1981)).  Accordingly, EDAN and PAAS have sufficiently shown, in the alternative, that the requirements of the New York long-arm statute are satisfied under an agency theory.

Finally, because the requirements of New York's long-arm statute have been met, the constitutional due process requirements have also been met. *See D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 105 (2d Cir. 2006) (finding that "the constitutional requirements of personal jurisdiction are satisfied because application of N.Y. C.P.L.R. § 302(a) meets due process requirements" (citing *United States v. Montreal Tr. Co.*, 358 F.2d 239, 242 (2d Cir. 1966)); *see*

*also Mercury Pub. Affairs*, 2020 WL 4926334, at *3; *Rich v. Fox News Network LLC*, No. 18-CV-2223 (GBD)(SN), 2020 WL 6276026, at *6 (S.D.N.Y Sept. 15, 2020); *Chatwal Hotels & Resorts*, 90 F. Supp. 3d at 108.  Accordingly, H. Cohen is subject to service.

### 2. <u>Subject Matter Jurisdiction</u>

ADYB brought this action under 28 U.S.C. § 1332, contending that it falls within the Court's diversity jurisdiction over claims "between . . . citizens of a State and citizens or subjects of a foreign state."  28 U.S.C. § 1332(a)(2).  The parties agree that ADYB is a citizen of New York [ECF No. 49 ¶ 14; ECF No. 45 ¶ 2]; EDAN and PAAS are citizens of the Republic of Ireland, a foreign state [ECF No. 49 ¶¶ 12–13; ECF No. 45 ¶¶ 3–4]; E. Cohen is a foreign citizen [ECF No. 102 at 11; ECF No. 95 at 1 n.1]; and H. Cohen, as a U.S. citizen domiciled in Israel, is a citizen of no state for diversity purposes [ECF No. 102 at 11; ECF No. 95 at 1 n.1, 8].  *See Fuerst v. Fuerst*, 832 F. Supp. 2d 210, 217 (E.D.N.Y. 2011) (noting that "where a United States citizen is domiciled abroad, he is considered neither a citizen of any state within the United States, nor a citizen or subject of a foreign state" (citing *Herrick Co., Inc. v. SCS Commc'ns, Inc.*, 251 F.3d 315, 322 (2d Cir. 2001))).  Because H. Cohen is a citizen of no state, his presence would destroy diversity jurisdiction under Section 1332.  *See, e.g.*, *Lehman Gov't Sec. v. Pickholz*, No. 95 CIV. 7744 LMM, 1996 WL 447995, at *2 (S.D.N.Y. Aug. 8, 1996).

EDAN and PAAS previously conceded this point,[5] but now they argue that the Court has supplemental jurisdiction over the counterclaims against ADYB and H. Cohen under 28 U.S.C. § 1367.  [ECF No. 95 at 8–9, 12; ECF No. 103 at 1–3.]  In cases where the district court has original jurisdiction, it may exercise "supplemental jurisdiction over all other claims that are so related to

---

[5] EDAN and PAAS acknowledged that H. Cohen would destroy diversity when they voluntarily dismissed the earlier-filed action against him and thereafter dismissed the entire case. [ECF No. 95-3 ¶ 5–6.] *See* Order, *Edan Admin. Servs.*, 1:19-cv-05051 (S.D.N.Y. July 10, 2019), ECF No. 32; Notice of Voluntary Dismissal, *Edan Admin. Servs.*, 1:19-cv-05051 (S.D.N.Y. July 23, 2019), ECF No. 33.

claims in the action within such original jurisdiction that they form part of the same case or controversy . . . .  Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties."  28 U.S.C. § 1367(a).  As the final provision makes clear, "claims asserted by or against parties joined under Rule 19 and Rule 20 will satisfy § 1367(a)." 13D Wright & Miller § 3567.1.  Because H. Cohen and E. Cohen are necessary parties with respect to the counterclaim for breach of contract, that counterclaim necessarily satisfies Section 1367(a).

The Court, however, must evaluate subject matter jurisdiction on a claim-by-claim basis. *Rocky Aspen Mgmt. 204 LLC v. Hanford Holdings LLC*, 358 F. Supp. 3d 279, 282 (S.D.N.Y. 2019) (citing *United Republic Ins. Co., in Receivership v. Chase Manhattan Bank*, 315 F.3d 168, 170–171 (2d Cir. 2003)); *Coakley v. Kingsbrook Jewish Med. Ctr.*, No. 16 Civ. 7009 (BMC), 2017 WL 398379, at *1 (E.D.N.Y. Jan. 30, 2017) (noting that "analysis of subject matter jurisdiction is a particularized inquiry for each claim" (citing *Hoops v. KeySpan Energy*, 794 F. Supp. 2d 371, 380 (E.D.N.Y. 2011))).

Under Section 1367(a), claims "form part of the same case or controversy" when they "derive from a common nucleus of operative fact."  *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 165 (1997) (quoting *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 725 (1966)); *accord Briarpatch Ltd., L.P. v. Phx. Pictures, Inc.*, 373 F.3d 296, 308 (2d Cir. 2004). Claims derive from a common nucleus of operative fact when the facts underlying the claims "substantially overlap[]."  *Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328, 335 (2d Cir. 2006) (quoting *Lyndonville Sav. Bank & Tr. Co. v. Lussier*, 211 F.3d 697, 704 (2d Cir. 2000)).

Compulsory counterclaims under Rule 13 automatically satisfy the common-nucleus test under Section 1367(a).  *E.g.*, *Sanders v. New World Design Build, Inc.*, No. 19-CV-1071 (VSB), 2020 WL 1957371, at *2 (S.D.N.Y. Apr. 23, 2020) (citing *Federman v. Empire Fire & Marine Ins. Co.*, 597 F.2d 798, 810–11 (2d Cir. 1979)); *Nicholson v. Feeding Tree Style, Inc.*, No. 12 Civ.

23

6236(JPO), 2014 WL 476355, at *2 (S.D.N.Y. Feb. 6, 2014).  A counterclaim is compulsory "if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim." *Jones v. Ford Motor Credit Co.*, 358 F.3d 205, 209 (2d Cir. 2004) (quoting Fed. R. Civ. P. 13(a)). This standard is met "when there is a 'logical relationship' between the counterclaim and the main claim."  *Id.* (citing *United States v. Aquavella*, 615 F.2d 12, 22 (2d Cir. 1979)).  The "logical relationship" test asks whether "the *essential facts of the claims are so logically connected* that considerations of judicial economy and fairness dictate that all the issues be resolved in one lawsuit." *Critical–Vac Filtration Corp. v. Minuteman Int'l, Inc.*, 233 F.3d 697, 699 (2d Cir. 2000) (quoting *Adam v. Jacobs*, 950 F.2d 89, 92 (2d Cir. 1991)).

Like the counterclaim for breach of contract,[6] the counterclaims asserted by EDAN, PAAS, and E. Cohen against ADYB and H. Cohen satisfy the common-nucleus test under Section 1367(a) because they are compulsory counterclaims under Rule 13(a).  The counterclaims for tortious interference, fraud, libel, and declaratory relief (Counts II–IV, VI and IX) are logically related to ADYB's causes of action for breach of contract and conversion because they arise from the parties' ongoing business relationship under the Investment Agreement, MOU-1, and MOU-2 and are premised on the same nucleus of operative facts.  *See Bezuszka v. L.A. Models, Inc.*, No. 04 Civ. 7703(NRB), 2006 WL 770526, at *19 (S.D.N.Y. Mar. 24, 2006) (finding that claims for tortious interference and fraud were compulsory counterclaims that should have been brought in prior

---

[6] Although the Court has already determined that the counterclaim for breach of contract involves the joinder of necessary parties under Rule 19 and as such independently satisfies Section 1367(a), it bears emphasizing that it is also a compulsory counterclaim. "Courts have consistently found that counterclaims based on a contract are compulsory in actions relating to the same contract."  *Skyline Steel, LLC v. Pilepro, LLC*, No. 13-CV-8171, 2015 WL 999981, at *5 (S.D.N.Y. Mar. 5, 2015) (collecting cases). The counterclaim for breach of contract (Count I) arises from the Investment Agreement, MOU-1, and MOU-2 [ECF No. 46 ¶¶ 86–90]—the same agreements from which ADYB's claim for breach of contract arises [ECF No. 45 ¶¶ 35–39]. *See Ventana DBS LLC v. Hayner Hoyt Corp.*, Nos. 3:18-cv-436 (GLS/ML), 5:19-cv-1376 (GLS/ML), 2020 WL 5549038, at *3 (N.D.N.Y. Sept. 16, 2020) (finding that claims "ar[o]se out of the same transaction or occurrence, as they both center[ed] on breaches of the same contract"); 6 Wright & Miller § 1410.1 ("When the same contract serves as the basis for both the claims and the counterclaims, the logical-relationship standard also has been satisfied . . . .").

lawsuit for breach of contract and in tort).  The counterclaim for unjust enrichment (Count V) arises from the contracts and the alleged obligation of ADYB and H. Cohen to support the marketing and sales efforts of EDAN.  *See Shmuel Shmueli, Bashe, Inc. v. Lowenfeld*, 68 F. Supp. 2d 161, 165 (S.D.N.Y. 1999).  In short, the "essential facts" of the counterclaims by EDAN, PAAS, and E. Cohen are "so logically connected" to the breach of contract claim by ADYB "that considerations of judicial economy and fairness dictate that all the issues be resolved in one lawsuit." *Jones*, 358 F.3d at 209 (collecting cases); *see also Harris v. Steinem*, 571 F.2d 119, 123 (2d Cir. 1978) (collecting cases).  Accordingly, because the counterclaims asserted by EDAN, PAAS, and E. Cohen are compulsory, they satisfy Section 1367(a) and the Court can exercise supplemental jurisdiction over them.

ADYB argues that, notwithstanding that they satisfy the common-nucleus requirement, the counterclaims fall within an exception to supplemental jurisdiction in diversity cases contained in Section 1367(b).  [ECF No. 102 at 10–11.]  Section 1367(b) provides:

> In any civil action of which the district courts have original jurisdiction founded solely on section 1332 of this title, the district courts shall not have supplemental jurisdiction under subsection (a) over claims by plaintiffs against persons made parties under Rule 14, 19, 20 or 24 of the Federal Rules of Civil Procedure, or over claims by persons proposed to be joined as plaintiffs under Rule 19 of such rules, or seeking to intervene as plaintiffs under Rule 24 of such rules, when exercising supplemental jurisdiction over such claims would be inconsistent with the jurisdictional requirements of section 1332.

28 U.S.C. § 1367(b).

Specifically, ADYB argues that the Court cannot exercise supplemental jurisdiction over the counterclaims again H. Cohen because his presence would defeat diversity.  [ECF No. 102 at 9–11.]  ADYB's argument ignores that Section 1367(b) "reflects Congress' intent to prevent original plaintiffs—but not defendants or third parties—from circumventing the requirements of diversity." *Viacom*, 212 F.3d at 726–27 (citing H.R. Rep. No. 101–734, at 29 (1990), *reprinted in*

1990 U.S.C.C.A.N. 6860, 6875).   Additionally, "[b]ecause defendants are involuntarily brought into court, their [claims a]re not deemed as suspect as those of the plaintiff, who is master of his complaint."  *Id.* at 727 (alterations in original) (quoting *United Capitol Ins. Co. v. Kapiloff*, 155 F.3d 488, 493 (4th Cir. 1998)).

The Court may exercise supplemental jurisdiction over the counterclaims against H. Cohen because EDAN, PAAS, and E. Cohen are not "plaintiffs" under Section 1367(b).  As several courts have found, "'plaintiff' in § 1367(b) refers to the original plaintiff in the action—not to a defendant that happens also to be a counter-plaintiff, cross-plaintiff, or third-party-plaintiff."  *State Nat. Ins. Co. Inc. v. Yates*, 391 F.3d 577, 580 (5th Cir. 2004); *see also Allstate Interiors & Exteriors, Inc. v. Stonestreet Const., LLC*, 730 F.3d 67, 73 (1st Cir. 2013) (collecting cases from five circuits and holding that "'plaintiff' in section 1367(b) refers to the original plaintiff in the action, and not to a defendant that also is a third-party plaintiff").   Indeed, several courts have held that supplemental jurisdiction under Section 1367(b) permits the joinder of a non-diverse counterclaim-defendant like H. Cohen.  *See Barefoot Architect, Inc. v. Bunge*, 632 F.3d 822, 836–37 (3d Cir. 2011); *Yates*, 391 F.3d at 580; *Kapiloff*, 155 F.3d at 493; *Branhaven, LLC v. BeefTek, Inc.*, 965 F. Supp. 2d 650, 662–63 (D. Md. 2013); *see also Zagaruyka & Assocs. v. HealthSmart Benefit Sols. Inc.*, No. CIV-18-697-G, 2020 WL 4606708, at *2 (W.D. Okla. Aug. 10, 2020) (exercising supplemental jurisdiction despite any lack of diversity between defendant-counterclaimant and counterclaim-defendant joined pursuant to Rule 13(h) (collecting cases)); *Preferred Care of Del., Inc. v. Crocker*, 173 F. Supp. 3d 505, 512 (W.D. Ky. 2016) (finding that joinder of non-diverse counterclaim-defendant did not destroy subject matter jurisdiction because the court had supplemental jurisdiction over the counterclaim); *Orea Energy Grp., LLC v. E. Tenn. Consultants, Inc.*, No. 3:09–CV–041, 2009 WL 3246853, at *2 (E.D. Tenn. Oct. 6, 2009) (same); *Travelers*

*Indem. Co. of America v. Holtzman Props., L.L.C.*, No. 4:08–CV–351 CAS, 2008 WL 3929574, at *4–5 (E.D. Mo. Aug. 21, 2008) (same).

ADYB argues that jurisdiction is improper under *Exxon Mobil Corp. v. Allapattah Services, Inc.*, 545 U.S. 546 (2005), and *Merrill Lynch & Co. Inc. v. Allegheny Energy, Inc.*, 500 F.3d 171 (2d Cir. 2007). In *Exxon Mobil*, a case involving whether courts may exercise supplemental jurisdiction over additional plaintiffs whose claims do not satisfy the amount-in-controversy, the Court noted that "[a] failure of complete diversity . . . contaminates every claim in the action." 545 U.S. at 564. In *Merrill Lynch*, the Second Circuit held that the district court could not exercise supplemental jurisdiction over counterclaims asserted against the plaintiff by a non-diverse party joined under Rule 19(a) and aligned as a defendant for jurisdictional purposes. 500 F.3d at 179–80. The court explained that the "assumption in *Viacom* that original jurisdiction is anchored in the diversity between the original parties and so any subsequent joinder that is not prohibited by § 1367(b) comes within the court's supplemental jurisdiction was misplaced." *Id.* at 179 (noting that "the contamination theory furnishes limitations on joinder in certain circumstances that may well extend beyond the restrictions listed in § 1367(b)").

These two cases do not undermine the Court's finding that it may exercise supplemental jurisdiction over the counterclaims against H. Cohen. As courts have recognized, *Merrill Lynch* "did not interpret *Exxon Mobil Corp.* to hold that the addition of a nondiverse party is always prohibited." *Cole Mech. Corp. v. Nat'l Grange Mut. Ins. Co.*, No. 06 Civ. 2875 (LAK)(HBP), 2008 WL 11395565, at *7 (S.D.N.Y. Aug. 13, 2008) (citing *Merrill Lynch*, 500 F.3d at 179); *see Morris & Judith Family P'ship, LLC v. Fid. Brokerage Servs. LLC*, No. 18-cv-8851 (JSR), 2019 WL 1447137, at *1 (S.D.N.Y. Feb. 28, 2019); *Regent Ins. Co. v. Integrated Pain Mgmt., S.C.*, Nos. No. 4:14–CV–1759 RLW, 4:15CV236 RLW, 2016 WL 5092564, at *2 (E.D. Mo. Sept. 19, 2016); *see also Metro Found. Contractors v. Arch Ins. Co.*, 498 F. App'x 98, 102 (2d Cir. 2012) (summary

order) (finding that non-diverse third-party defendant could assert claims against original plaintiff without destroying subject matter jurisdiction).  Indeed, *Merrill Lynch* noted that "a diversity-destroying party joined after the action is underway *may* catalyze loss of jurisdiction," 500 F.3d at 179 (emphasis added), and that *Exxon Mobil* "does not purport to announce a new standard for assessing diversity defects but instead relies on the Court's consistent construction of the complete diversity rule," *id.* (citing *Exxon Mobil*, 545 U.S. at 553, 556, 564).

   *Merrill Lynch* involved the joinder under Rule 19 of a necessary party that asserted its own claims.  500 F.3d at 177.  Here, unlike in *Merrill Lynch*, original defendants, together with a newly joined necessary party, seek to assert compulsory counterclaims against a non-diverse would-be counterclaim defendant, with both the new counterclaim plaintiff and the new counterclaim defendant joined pursuant to Rule 13(h).  As a leading practice treatise cited favorably in *Merrill Lynch* explains:

> [P]ersons brought into an action under Rule 13(h) as parties to . . . a compulsory counterclaim under Rule 13(a) . . . will come under the ancillary (now supplemental) subject-matter jurisdiction of the court. . . . Thus, a party can be added for purposes of adjudicating those claims without regard to the party's citizenship or to whether the party is joined pursuant to Rule 19 or Rule 20, since the party's presence will not be deemed to destroy the court's existing jurisdiction.

13B Wright & Miller § 1436; *see Associated Dry Goods Corp. v. Towers Fin. Corp.*, 920 F.2d 1121, 1126 (2d Cir. 1990) (noting that "ancillary jurisdiction should be more readily available to one haled into court against his or her will than to a plaintiff who has chosen the forum for litigation," such as a defendant that "seek[s] to join a third party as a Rule 13(h) counterclaim defendant" (citing *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 376 (1978))).  Simply put, Section 1367(b) "does not apply to parties joined under Rule 13(h) by a defendant asserting either a counterclaim or crossclaim."  13B Wright & Miller § 1436.

28

Aside from being well-grounded in caselaw, much of which post-dates *Exxon Mobil*, *see* cases cited *supra* p. 26, this construction of Section 1367(b) is, at the very least, one of the "well-established exceptions to the complete diversity rule" that *Exxon Mobil* did not eviscerate. *Merrill Lynch*, 500 F.3d at 179 (collecting cases); *see Associated Dry Goods*, 920 F.2d at 1126 (finding it proper to "exercis[e] ancillary jurisdiction over any Rule 13(h) counterclaim that [the original defendant] assert[ed] against [a nonparty counterclaim defendant]" (collecting cases)); *see Hercules Inc. v. Dynamic Export Corp.*, 71 F.R.D. 101, 108 (S.D.N.Y. 1976) (noting that "persons brought into an action as parties to a compulsory counterclaim will come under the subject matter jurisdiction of the court regardless of an ensuing lack of diversity" (collecting cases)). Accordingly, the Court finds that its exercise of supplemental jurisdiction over the counterclaims by EDAN, PAAS, and E. Cohen against ADYB and H. Cohen is permissible and not inconsistent with *Exxon Mobil* and *Merrill Lynch*.

In sum, the Court holds that H. Cohen and E. Cohen are necessary parties and that their joinder is feasible. The Court therefore grants the motion to join H. Cohen and E. Cohen as parties to the EDAN/PAAS counterclaims.

## C. *The Court May Exercise Jurisdiction Over E. Cohen's Individual Claims*

ADYB also argues that the Court lacks subject matter jurisdiction over E. Cohen's independent claims for breach of contract and unjust enrichment (Counts VII–VIII). [ECF No. 102 at 8.] ADYB argues that these claims are not compulsory counterclaims, let alone counterclaims, because no claims are brought against E. Cohen personally and that they "are premised on different facts that are not logically related" to ADYB's claims. [*Id.* at 5–6, 8.]

E. Cohen's claims at minimum satisfy the common-nucleus requirement of Section 1367(a). E. Cohen's claim for breach of contract would satisfy the stricter compulsory-counterclaim standard because it arises from the Investment Agreement, one of the contracts under

which ADYB sues.  [ECF No. 49 ¶¶ 126–32.]  *See Ventana DBS*, 2020 WL 5549038, at *3; *Skyline Steel*, 2015 WL 999981, at *5 (collecting cases).  Moreover, as discussed above, there is substantial factual overlap between E. Cohen's two claims and ADYB's breach of contract claim to satisfy the common-nucleus requirement of Section 1367(a).  *See supra* Section II.A.2; *see also, e.g.*, *Kent v. Drought*, No. 08–CV–414–JTC, 2010 WL 4320334, at *6 (W.D.N.Y. Oct. 28, 2010) (finding common-nucleus test satisfied where claims both concerned the same contract, "the scope of that contract, the rights of the parties under the contract, and the ramifications of the actions of both plaintiff and the defendants in light of the contract" (citing *Jones*, 358 F.3d at 214; and *Maxwell v. N.Y. Univ.*, No. 08 CV 3583(HB), 2008 WL 5435327, *2 (S.D.N.Y. Dec. 31, 2008))).

ADYB argues that with respect to his independent claims, E. Cohen should be classified as a plaintiff and barred from asserting them because no claims are asserted against him and he has voluntarily inserted himself into this lawsuit to seek affirmative relief.  [ECF No. 102 at 8.]

It is the Court's duty "to look beyond the pleadings and arrange the parties according to their sides in the dispute."  *Md. Cas. Co. v. W.R. Grace & Co.*, 23 F.3d 617, 622 (2d Cir. 1993) (quoting *Indianapolis v. Chase Nat'l Bank*, 314 U.S. 63, 69–70 (1941)).  When determining the proper alignment of parties, courts must "examine 'the realities of the record' to discover the 'real interests' of the parties."  *Id.* at 623 (quoting *Chase Nat'l Bank*, 314 U.S. at 69); *see Lewis v. Odell*, 503 F.2d 445, 447 (2d Cir. 1974) (noting that courts must "[]align parties according to their real interests so as to produce an actual collision of interests" (citing *Chase Nat'l Bank*, 314 U.S. at 69)).  This is a "fact-specific inquiry" that requires a "practical examination of the entire record." *Md. Cas.*, 23 F.3d at 623.

E. Cohen is best properly aligned with Defendants EDAN and PAAS in this action and therefore should not be classified as a plaintiff under Section 1367(b).  E. Cohen's interests align with EDAN and PAAS.  Indeed, he risks losing his entire investment if ADYB prevails on its

claims against EDAN and PAAS.  [ECF No. 103 at 10.]  In the earlier lawsuit, EDAN and PAAS, together with E. Cohen, sued ADYB and H. Cohen.  After they voluntarily dismissed the case without prejudice, EDAN, PAAS, *and* E. Cohen were preparing to sue H. Cohen in Israel [*see* ECF No. 95-3 ¶ 6] before ADYB commenced this action, haling EDAN and PAAS into this jurisdiction.  In this case, EDAN and PAAS "did not voluntarily avail themselves of the federal forum; they were named as defendants [by ADYB] and were forced to raise their compulsory counterclaims or lose them."  *Bunge*, 632 F.3d at 837.  They did so, and they properly joined E. Cohen to those compulsory counterclaims under Rule 13(h).

E. Cohen's joinder under Rule 13(h) distinguishes this case from *Merrill Lynch*.  E. Cohen has been properly joined with EDAN and PAAS on six compulsory counterclaims against ADYB and H. Cohen (Counts I–VI) over which the Court has supplemental jurisdiction.  There is no reasonable basis to conclude that Section 1367(b) prohibits E. Cohen from asserting additional claims against ADYB and H. Cohen that satisfy Section 1367(a).  The plain text of Section 1367(b) does not preclude E. Cohen from asserting his independent claims since he was joined properly under Rule 13(h) and is not aligned as a plaintiff.  *See* 28 U.S.C. § 1367(b).  Moreover, E. Cohen's asserting separate claims does not frustrate the purpose of Section 1367(b).  *See Metro Found. Contractors*, 498 F. App'x at 101–02 (alteration in original) ("The purpose of Section 1367(b) is to prevent 'plaintiffs [from being able] to evade the jurisdictional requirement of 28 U.S.C. § 1332 by . . . naming initially only those defendants whose joinder satisfies section 1332's requirements and later adding claims not within original federal jurisdiction against other defendants who have intervened or been joined on a supplemental basis.'" (quoting *Viacom*, 212 F.3d at 727)).  E. Cohen is not "circumventing the requirements of diversity."  *Viacom*, 212 F.3d at 727.

The fact that E. Cohen asserts affirmative claims for relief while there are no claims asserted against him does not mandate that he be classified as a plaintiff and prevented from

asserting further claims against ADYB and H. Cohen.  *See, e.g.*, *Price v. Wolford*, 608 F.3d 698, 705 (10th Cir. 2010) (classifying non-diverse Rule 24 intervenor as a defendant because there was a substantial conflict between it and plaintiffs and permitting it to assert a "counterclaim" against plaintiff despite there being no claim against it); *Cole Mech. Corp.*, 2008 WL 11395565, at *7–8 (classifying non-diverse Rule 24 intervenor who asserted counterclaims against plaintiff as a defendant despite no claims asserted against it); *cf. Metro Found. Contractors*, 498 F. App'x at 101–03 (relying on text and purpose of Section 1367(a) and rejecting argument that "in voluntarily asserting claims for affirmative relief, [a third-party defendant] is no different from a plaintiff voluntarily intervening in an action to assert claims against another party and therefore should be classified as a plaintiff").

After EDAN and PAAS's case against ADYB and H. Cohen was dismissed for jurisdictional reasons, it was ADYB that elected to invoke the jurisdiction of the Court as a plaintiff suing on the same contracts, thereby opening the door for EDAN and PAAS to join E. Cohen as a necessary party to their counterclaims pursuant to Rule 13(h) and for the three of them to ask that the entire logically intertwined set of claims all grounded in the same contracts be resolved in one proceeding.  *See Associated Dry Goods*, 920 F.2d at 1126 ("Congress did not intend to confine the jurisdiction of federal courts so inflexibly that they are unable to protect legal rights or effectively to resolve an entire, logically entwined lawsuit.  Those practical needs are the basis of ancillary jurisdiction." (quoting *Kroger*, 437 U.S. at 377)).   Accordingly, the Court may exercise supplemental jurisdiction over E. Cohen's individual claims against H. Cohen.[7]

---

[7] Although not raised by any party, the Court has considered Section 1367(c) and finds no reason to decline to exercise supplement jurisdiction over the counterclaims by EDAN, PAAS, and E. Cohen or E. Cohen's independent claims. *See generally Catzin v. Thank You & Good Luck Corp.*, 899 F.3d 77 (2d Cir. 2018).

# III.

## H. COHEN'S MOTION TO DISMISS COUNTERCLAIMS
## FOR INSUFFICIENT SERVICE

H. Cohen moves, pursuant to Federal Rules of Civil Procedure 12(b)(4) and 12(b)(5), to dismiss the counterclaims against him for insufficient process and service of process.  [ECF No. 91.]  H. Cohen is correct, of course, that "[b]efore a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied."  *Omni Capital Intern., Ltd. v. Rudolf Wolff & Co., Ltd.*, 484 U.S. 97, 104 (1987).  But, until the motion to join H. Cohen as a party was granted, service could not be made on him.  *See ManorCare of Easton PA LLC v. Nagy*, No. 13–5957, 2015 WL 3929633, at *5 (E.D. Pa. June 26, 2015) ("Under Rule 13(h), a counterclaim may join parties, and it will of course require summonses for service.").

This motion appears to be the result of a misinterpretation or misunderstanding of an Order by Judge Schofield.  Upon receipt of the parties' pre-motion letters, Judge Schofield, to whom this case was previously assigned, directed EDAN and PAAS to "file a proof of service of the amended counterclaims on Mr. H. Cohen."  [ECF No. 54 at 3.]  EDAN and PAAS understood this order as a directive to effectuate service within the meaning of Rule 4.  However, as the Clerk of Court correctly noted when rejecting their request for a summons, "a summons cannot be requested for parties that are not part of this case."  [ECF Entry Feb. 4, 2020.]  Accordingly, no summons could issue and service could not be made until the Court ruled on the motion to join H. Cohen as a party to the case.

H. Cohen's motion to dismiss the counterclaims against him [ECF No. 91] is denied without prejudice as premature.  Since the Court has now granted the motion to join H. Cohen as a party, he must be served.  Accordingly, the Court shall direct the Clerk of Court to issue a summons.  If service is not effectuated, timely and properly, H. Cohen may renew this motion.

## IV.

## MOTION TO DISMISS COUNTERCLAIMS PURSUANT TO RULE 12(b)(6)

ADYB has moved to dismiss the following counterclaims pursuant to Federal Rule of Civil Procedure 12(b)(6): (1) tortious interference with contract (Count II); (2) tortious interference with business relations (Count III); (3) fraudulent inducement (Count IV); (4) unjust enrichment (Count V); (5) libel (Count VI); and (6) declaratory judgment (Count IX).  [ECF No. 66 at 1.]  ADYB filed its motion to dismiss before EDAN and PAAS filed their joinder motion.  Therefore, the motion does not contemplate joinder of H. Cohen and E. Cohen and addresses the counterclaims as if asserted only by EDAN and PAAS and solely against ADYB.

In the interests of judicial economy and given the advice by the parties that discovery is closed regardless of the Court's rulings on these motions [*see* ECF No. 156], the Court addresses the 12(b)(6) motion to dismiss the counterclaims in the current posture of the case in light of the rulings set forth above—that is, with H. Cohen and E. Cohen as parties to the action.  The Court has discretion to dismiss claims *sua sponte* against non-appearing defendants where the plaintiff has received notice and an opportunity to be heard.  *Marcelin v. Cortes-Vazquez*, No. 09–CV– 4303 (RRM)(JMA), 2010 WL 5665037, at *3 n.4 (E.D.N.Y. Dec. 9, 2010) (collecting cases). Here, *sua sponte* consideration of counterclaims with respect to H. Cohen is appropriate because the factual allegations are the same against him and ADYB and the counterclaim plaintiffs had a full opportunity to state their claims.  *Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21, 26 n.6 (2d Cir. 1990).

### A.  *Legal Standard*

Courts evaluate a motion to dismiss a counterclaim under the same standard as a motion to dismiss a claim in a complaint.  *E.g.*, *Dentsply Int'l Inc. v. Dental Brands for Less LLC*, No. 15 Civ. 8775, 2016 WL 6310777, at *2 (S.D.N.Y. Oct. 27, 2016) (citing *Keep on Kicking Music, Ltd.*

*v. Hibbert*, No. 15 Civ. 7464, 2016 WL 4386047, at *2 (S.D.N.Y. Aug. 17, 2016)).  To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).  While a sufficiently pleaded complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotation marks, alterations, and citations omitted); *see also Iqbal*, 556 U.S. at 678 (noting that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" (citing *Twombly*, 550 U.S. at 555)).

In ruling on a motion to dismiss, the Court must "accept as true all factual allegations," *Hernandez v. United States*, 939 F.3d 191, 198 (2d Cir. 2019) (quoting *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014)), and "construe all reasonable inferences that can be drawn from the complaint in the light most favorable to the plaintiff," *Arar v. Ashcroft*, 585 F.3d 559, 567 (2d Cir. 2009) (citing *Roth v. Jennings*, 489 F.3d 499, 501 (2d Cir. 2007); and *Conyers v. Rossides*, 558 F.3d 137, 143 (2d Cir. 2009)).  However, the Court is "not required to credit conclusory allegations or legal conclusions couched as factual allegations." *Dale v. UnitedHealthcare Ins. Co.*, 974 F.3d 183, 188–89 (2d Cir. 2020) (quoting *Nielsen*, 746 F.3d at 62); *see also Edwards v. Sequoia Fund, Inc.*, 938 F.3d 8, 12 (2d Cir. 2019); *Rothstein v. UBS AG*, 708 F.3d 82, 94 (2d Cir. 2013).

**B.** *Analysis*

   **1.** **Tortious Interference with Contract (Count II)**

   In support of their claim for tortious interference with the PAAS-PPG License Agreement, EDAN and PAAS allege the following: (1) the PAAS-PPG License Agreement is a valid, enforceable contract; (2) ADYB and H. Cohen knew of the contract; (3) ADYB and H. Cohen intentionally interfered with the contract by attempting to revoke the assignments of the patents to EDAN by filing the documents with the USPTO; (4) the filings caused PAAS to breach the contract with PPG because PAAS claimed to have an exclusive license to the rights covered by the patents and had granted PPG an exclusive license to use the patents; and (5) the breach damaged the relationship of EDAN and PAAS with PPG.  [ECF No. 49 ¶¶ 92–97.]  These allegations are insufficient to state a claim for tortious interference with contract.

   Under New York law, a claim for tortious interference with a contract requires "[1] the existence of a valid contract between the plaintiff and a third party, [2] defendant's knowledge of that contract, [3] defendant's intentional procurement of the third-party's breach of the contract without justification, [4] actual breach of the contract, and [5] damages resulting therefrom." *Rich v. Fox News Network, LLC*, 939 F.3d 112, 126–27 (2d Cir. 2019) (quoting *Lama Holding Co. v. Smith Barney Inc.*, 88 N.Y.2d 413, 424, 646 N.Y.S.2d 76, 668 N.E.2d 1370 (1996)).  EDAN and PAAS fail to allege adequately facts to plead the third and fourth elements of a tortious interference with contract claim.  EDAN and PAAS argue that they have stated a claim because the "PAAS-PPG License Agreement quickly fell apart and became impossible to perform."  [ECF No. 107 at 5.]  The New York Court of Appeals and the Second Circuit, however, have consistently emphasized the necessity of an *actual breach* by the third party.  *See NBT Bancorp Inc. et al. v. Fleet/Norstar Fin. Grp., Inc.*, 87 N.Y.2d 614, 620–21, 641 N.Y.S.2d 581, 664 N.E.2d 492 (1996) (emphasizing necessity of breach to state claim for tortious interference with contract (collecting

cases)); *Jack L. Inselman & Co. v. FNB Fin. Co.*, 41 N.Y.2d 1078, 1080, 396 N.Y.S.2d 347, 364

N.E.2d 1119, 1120 (1977) ("[T]o have a cause of action for tortious interference of contract, it is

axiomatic that there must be a breach of that contract by the other party." (collecting cases))); *see*

*also Baylis v. Marriott Corp.*, 906 F.2d 874, 877 (2d Cir. 1990) ("[A] party may not recover for

tortious inducement of breach of a contract without proving that the underlying contract has been

breached." (citing *Enercomp, Inc. v. McCorhill Publ'g, Inc.*, 873 F.2d 536, 541 (2d Cir. 1989);

and *Inselman*, 41 N.Y.2d at 1080)); *accord Fonar Corp. v. Magnetic Resonance Plus, Inc.*, 957 F.

Supp. 477, 481 (S.D.N.Y. 1997).  Because they fail to allege that PPG breached the PAAS-PPG

License Agreement, EDAN and PAAS fail to state a claim for tortious interference with contract.

*See Kirch v. Liberty Media Corp.*, 449 F.3d 388, 402 (2d Cir. 2006) (finding that allegations that

third party "walked away" and the project "fell apart" were insufficient to satisfy breach element);

*Ace Arts, LLC v. Sony/ATV Music Publ'g, LLC*, 56 F. Supp. 3d 436, 451 (S.D.N.Y. 2014); *RSM*

*Prod. Corp. v. Fridman*, 643 F. Supp. 2d 382, 409–10 (S.D.N.Y. 2009); *American Bldg. Maint.*

*Co. of N.Y. v. Acme Prop. Servs., Inc.*, 515 F. Supp. 2d 298, 315 (N.D.N.Y. 2007).

Moreover, EDAN and PAAS fail to state a claim since they allege that *PAAS* breached the

PAAS-PPG License Agreement as a result of ADYB and H. Cohen's actions; they do not allege

as the law requires that PPG, the third party, breached the contract.  The tortious interference claim

therefore fails as a matter of law.  *See Cicel (Beijing) Sci. & Tech. Co.. v. Misonix, Inc.*, No. 2:17-

cv-1642 (ADS)(SIL), 2017 WL 4535933, at *7 (E.D.N.Y. Oct. 7, 2017) (dismissing tortious

interference with contract claim because "rather than alleging that one of the third parties breached

its contract with Cicel, the Plaintiff alleges that it breached its contracts with third parties");

*Symquest Grp., Inc. v. Canon U.S.A., Inc.*, 186 F. Supp. 3d 257, 267 (E.D.N.Y. 2016) (dismissing

tortious interference with contract claim because plaintiff "does not allege that any of its end-users

breached their contracts, but rather that [plaintiff] will breach or has breached its contracts with

third parties as a result of [defendant's] alleged breach of its contract with [plaintiff]");
*Plasticware, LLC v. Flint Hills Res., LP*, 852 F. Supp. 2d 398, 405 (S.D.N.Y. 2012) (dismissing
tortious interference with contract claim because "Plaintiff does not allege that any third party
breached its contract, but instead alleges that *Plaintiff* breached its contracts with third parties").
*But see Italverde Trading, Inc. v. Four Bills of Lading*, 485 F. Supp. 2d 187, 203 (E.D.N.Y. 2007)
(noting that "those few New York state courts to have considered the issue have held that causing
a plaintiff to breach a contract by preventing the plaintiff's performance constitutes tortious
interference with a contract, provided that the other elements of the tort are satisfied" (citing *Stiso
v. Inserra Supermarkets, Inc.*, 179 A.D.2d 878, 880, 578 N.Y.S.2d 680 (3d Dep't), *leave to appeal
denied*, 80 N.Y.2d 757, 588 N.Y.S.2d 825, 602 N.E.2d 233 (1992); and *Morris v. Blume*, 55
N.Y.S.2d 196, 199 (Sup. Ct. N.Y. Cty. 1945), *aff'd*, 269 A.D. 832, 56 N.Y.S.2d 414 (1st Dep't
1945))).   Accordingly, the counterclaim for tortious interference with contract (Count II) is
dismissed.

### 2.  Tortious Interference with Business Relations (Count III)

Under New York law, a claim for tortious interference with business relations requires a
showing that "(1) the plaintiff had business relations with a third party; (2) the defendant interfered
with those business relations; (3) the defendant acted for a wrongful purpose or used dishonest,
unfair, or improper means; and (4) the defendant's acts injured the relationship."  *16 Casa Duse,
LLC v. Merkin*, 791 F.3d 247, 261 (2d Cir. 2015) (quoting *Catskill Dev., L.L.C. v. Park Place
Entm't Corp.*, 547 F.3d 115, 132 (2d Cir. 2008)).  "Conduct constituting tortious interference with
business relations is, by definition, conduct directed not at the plaintiff itself, but at the party with
which the plaintiff has or seeks to have a relationship."  *Symquest Grp.*, 186 F. Supp. 3d at 268
(alteration omitted) (quoting *Carvel Corp. v. Noonan*, 3 N.Y.3d 182, 192, 785 N.Y.S.2d 359, 818
N.E.2d 1100 (2004)).

The requirement that the defendant acted for a wrongful purpose or used improper means "sets a high bar." *16 Casa Duse*, 791 F.3d at 262.  Generally, "the defendant's conduct must amount to a crime or an independent tort." *Carvel*, 3 N.Y.3d at 190.  Courts have recognized an exception to this rule "where a defendant engages in conduct 'for the sole purpose of inflicting intentional harm on plaintiffs.'" *Id.* (quoting *NBT Bancorp, Inc. v. Fleet/Norstar Fin. Grp., Inc.*, 215 A.D.2d 990, 990, 628 N.Y.S.2d 408 (3d Dep't 1995), *aff'd*, 87 N.Y.2d 614, 641 N.Y.S.2d 581, 664 N.E.2d 492 (1996)).  But "[w]hen a defendant has acted with a permissible purpose, such as 'normal economic self-interest,' wrongful means have not been shown, even if the defendant was 'indifferent to the [plaintiff's] fate.'" *16 Casa Duse*, 791 F.3d at 262 (quoting *Carvel*, 3 N.Y.3d at 190); *see also Hassan v. Deutsche Bank A.G.*, 515 F. Supp. 2d 426, 430 (S.D.N.Y. 2007) ("A motive of 'normal economic self-interest' is inconsistent with a sole purpose of inflicting intentional harm." (quoting *Carvel*, 3 N.Y.3d at 190; and citing *Lawrence v. Union of Orthodox Jewish Congregations of America*, 32 A.D.3d 304, 820 N.Y.S.2d 60 (1st Dep't 2006))).

EDAN and PAAS have failed to plead the wrongful purpose or improper means element. EDAN and PAAS base their tortious interference with business relations claim on the same factual allegations as their tortious interference with contract claim.  [*Compare* ECF No. 49 ¶¶ 91–97, *with id.* ¶¶ 98–102.]  EDAN and PAAS allege that interferences by ADYB and H. Cohen were intentional and "aimed to harm EDAN and PAAS." [*Id.* ¶ 101.]  But EDAN and PAAS also allege, to their detriment, that ADYB and H. Cohen sought to usurp from EDAN and PAAS "the business opportunity and relationship with PPG and realize and reap for themselves the substantial monetary profits, all to the exclusion of EDAN and PAAS."  [*Id.* ¶¶ 5, 82.]  Because ADYB and H. Cohen allegedly acted in part out of economic self-interest—a permissible purpose—the third element is not satisfied.  *See RFP LLC v. SCVNGR, Inc.*, 788 F. Supp. 2d 191, 196 (S.D.N.Y. 2011) (dismissing claim for tortious interference with business relations because "the only

plausible inference to be made from the pleadings is that the Counter–Defendants were motivated at least in part by their own economic interest"); *Medtech Prods. Inc. v. Ranir, LLC*, 596 F. Supp. 2d 778, 816 (S.D.N.Y. 2008) (granting motion to dismiss where plaintiff did not allege that defendants acted solely out of malice but that "Defendants were motivated by their own economic and competitive interests"); *Masefield AG v. Colonial Oil Indus.*, No. 05 Civ. 2231(PKL), 2006 WL 346178, *9 (S.D.N.Y. Feb. 15, 2006) (dismissing claim for tortious interference with business relations where claimant did not allege malice but a "motivat[ion] by a desire for profit"). Accordingly, the counterclaim for tortious interference with business relations (Count III) is dismissed.

### 3. **Fraudulent Inducement (Count IV)**

To state a claim for fraudulent inducement under New York law, a plaintiff must allege: "(i) a material misrepresentation of a presently existing or past fact; (ii) an intent to deceive; (iii) reasonable reliance on the misrepresentation by [the plaintiff]; and (iv) resulting damages." *Johnson v. Nextel Commc'ns, Inc.*, 660 F.3d 131, 143 (2d Cir. 2011) (citing *Ross v. Louise Wise Servs., Inc.*, 8 N.Y.3d 478, 488, 836 N.Y.S.2d 509, 868 N.E.2d 189 (2007)).

Generally, "a fraud claim may not be used as a means of restating what is, in substance, a claim for breach of contract." *Wall v. CSX Transp., Inc.*, 471 F.3d 410, 416 (2d Cir. 2006). To maintain a claim for fraudulent inducement that is distinct from a breach of contract claim, a plaintiff must (1) "demonstrate a legal duty separate from the duty to perform under the contract"; (2) "demonstrate a fraudulent misrepresentation collateral or extraneous to the contract"; or (3) "seek special damages that are caused by the misrepresentation and unrecoverable as contract damages." *Bridgestone/Firestone Inc. v. Recovery Credit Servs., Inc.*, 98 F.3d 13, 20 (2d Cir. 1996) (collecting cases).

It is well established that "misrepresentations of a future intent to perform under a contract are neither collateral nor extraneous to the contract." *PetEdge, Inc. v. Garg*, 234 F. Supp. 3d 477, 492 (S.D.N.Y. 2017) (collecting cases); *see also Ningbo Prods. Import & Export Co. v. Eliau*, No. 11-cv-650 (PKC), 2011 WL 5142756, at *4 (S.D.N.Y. Oct. 31, 2011) (noting that, in pleading a fraud claim, "plaintiff may not rely on defendants' purported misrepresentations of *future intent* to perform; plaintiff must identify misrepresentations of presently existing facts made to induce plaintiff to enter the [contract]" (citing *Cohen v. Koenig*, 25 F.3d 1168, 1172 (2d Cir. 1994))). Furthermore, New York courts have held that "a fraud claim is duplicative where it arises from the same facts and alleges the same damages as the breach-of-contract claim and merely adds conclusory allegations that the defendant made a promise to perform obligations under the contract while harboring a concealed intent not to perform that obligation." *Coinmint, LLC v. Main Mill St. Invs., LLC*, Nos. 8:18-CV-1404 (GTS/CFH); 8:19-CV-0328 (GTS/CFH), 2019 WL 4015687, at *8 (N.D.N.Y. Aug. 26, 2019) (citing *Cronos Grp. Ltd. v. XcomIP, LLC*, 156 A.D.3d 54, 62–63, 64 N.Y.S.3d 180 (1st Dep't 2017)).

EDAN and PAAS base their fraudulent inducement claim on the following allegations: H. Cohen refused to sign the proposed written agreement to modify the Investment Agreement after orally promising to enter into a new contract without any benchmarks [ECF No. 49 ¶¶ 61–62, 104]; H. Cohen knowingly made false statements that he would continue to support the PAAS-PPG License Agreement [*id.* ¶ 105]; and EDAN transmitted to H. Cohen additional monthly payments totaling $71,600 based on H. Cohen's representations that he would remove the benchmarks or, at a minimum, not disrupt the PAAS-PPG License Agreement [*id.* ¶¶106–107]. But EDAN and PAAS also allege: H. Cohen was obligated under the Investment Agreement "to support the marketing and sales efforts" of EDAN [*id.* ¶ 28]; they advised H. Cohen that the benchmarks "needed to be removed" because they would deter prospective investors from entering into a deal

[*id.* ¶ 6]; and the monthly payments were based "on the express assumption that [H. Cohen] would continue cooperating with them in their business relationship with PPG" [*id.* ¶ 9; *see also, e.g.*, *id.* ¶ 11 (alleging that H. Cohen "continuously and actively led EDAN and PAAS to reasonably believe . . . that he would support and advance the project with PPG")].

EDAN and PAAS's claim for fraudulent inducement fails because it is duplicative of their breach of contract claim. The Investment Agreement broadly obligates ADYB and H. Cohen "to support the marketing and sales efforts" of EDAN. [ECF No. 45 ¶ 28.] EDAN and PAAS allege, *inter alia*, that removal of the benchmarks was necessary to lure prospective investors into a business relationship with EDAN and PAAS. [*See* ECF No. 49 ¶¶ 6, 59–60.] The attempt by EDAN and PAAS to recharacterize H. Cohen's alleged statements as falling beyond the scope of H. Cohen's contractual obligation to support EDAN's sales and marketing efforts is unpersuasive. [ECF No. 107 at 15.] Because H. Cohen had a pre-existing contractual obligation to support EDAN's sales and marketing efforts, EDAN and PAAS cannot maintain an independent claim for fraudulent inducement based on H. Cohen's allegedly false statements that he would continue to support the PAAS-PPG License Agreement. *See Ithaca Capital Invs. I S.A. v. Trump Panama Hotel Mgmt. LLC*, 450 F. Supp. 3d 358, 370 (S.D.N.Y. 2020) (dismissing fraudulent inducement counterclaim as duplicative of breach of contract counterclaim where "Defendants only allege[d] that Plaintiffs promised that they would take no actions adverse to the interests of Defendants . . . [, which] is exactly Plaintiffs' duty as set forth in [the contract]"); *Wild Bunch, SA v. Vendian Entm't, LLC*, 256 F. Supp. 3d 497, 506–07 (S.D.N.Y. 2017) (finding that defendant's false assurances of its intent to perform pre-existing contractual obligations could not support fraudulent inducement claim).

In any event, the damages EDAN and PAAS allege make abundantly clear that the fraudulent inducement claim is duplicative of the breach of contract claim. EDAN and PAAS seek

the same damages for their alleged fraudulent inducement claim (Count IV) and their breach of contract claim (Count I)—$3.8 million in damages, plus the loss of expected revenues and profits arising out of the PAAS-PPG License Agreement and the subsequent TARDEC project, to be proven at trial.  [*Compare* ECF No. 49 ¶ 110, *with id.* ¶ 90.]  *See Myers Indus., Inc. v. Schoeller Arca Sys., Inc.*, 171 F. Supp. 3d 107, 122–23 (S.D.N.Y. 2016) ("In New York, duplicative claims arise from the same facts and allege the same damages." (citing *NetJets Aviation, Inc. v. LHC Commc'ns, LLC*, 537 F.3d 168, 175 (2d Cir. 2008))); *see also Triad Int'l Corp. v. Cameron Indus., Inc.*, 122 A.D.3d 531, 531–32, 998 N.Y.S.2d 13 (1st Dep't 2014) (affirming dismissal of fraud claim as duplicative where "plaintiff s[ought] the same compensatory damages for both claims . . . [and] its purported fraud damages [were] actually contract damages").  While EDAN and PAAS also seek punitive damages for the alleged fraudulent inducement, "punitive damages are, by definition, not 'caused by' fraud and therefore do not count as 'special damages' that would differentiate the fraud claim from the breach of contract claim."  *Magnacoustics, Inc. v. Integrated Comput. Sols., Inc.*, No. 17-CV-4967 (RER), 2020 WL 4041310, at *6 (E.D.N.Y. July 17, 2020) (citing *MBIA Ins. Corp. v. Credit Suisse Sec. (USA) LLC*, No. 603751/2009, 2017 WL 1201868, at *22 (N.Y. Sup. Ct. N.Y. Cnty. Mar. 31, 2017)); *see Mosaic Caribe, Ltd. v. AllSettled Grp., Inc.*, 117 A.D.3d 421, 422–23, 985 N.Y.S.2d 33 (1st Dep't 2014) (finding that fraud claim was duplicative of breach of contract claim where plaintiff sought the same damages apart from a request for punitive damages from the alleged fraud).

In short, EDAN and PAAS's claim for fraudulent inducement is duplicative of their claim for breach of contract.  Alleging that H. Cohen falsely represented that he intended to fulfill his obligations under the Investment Agreement by removing the benchmarks and cooperating with EDAN and PAAS does not create a separate cause of action for fraudulent inducement.  *See*

*Coinmint*, 2019 WL 4015687, at *8.  Accordingly, EDAN and PAAS's fraudulent inducement claim is dismissed.

### 4. <u>Unjust Enrichment (Count V)</u>

EDAN and PAAS have plausibly stated a claim for unjust enrichment against H. Cohen based on the increased payments transmitted to him; however, they have failed to plausibly state a claim for unjust enrichment against ADYB.

To state a claim for unjust enrichment under New York law, a plaintiff must show that "(1) defendant was enriched, (2) at plaintiff's expense, and (3) equity and good conscience militate against permitting defendant to retain what plaintiff is seeking to recover." *Briarpatch Ltd. v. Phx. Pictures, Inc.*, 373 F.3d 296, 306 (2d Cir. 2004) (citing *Clark v. Daby*, 300 A.D.2d 732, 732, 751 N.Y.S.2d 622 (3d Dep't 2002)).  The existence of a valid, enforceable contract governing a particular subject matter generally precludes recovery based on unjust enrichment for events arising out of that subject matter.  *IDT Corp. v. Morgan Stanley Dean Witter & Co.*, 12 N.Y.3d 132, 142, 879 N.Y.S.2d 355, 907 N.E.2d 268 (2009) (citing *Clark–Fitzpatrick, Inc. v. Long Island R.R. Co.*, 70 N.Y.2d 382, 388, 521 N.Y.S.2d 653, 516 N.E.2d 190 (1987)).  Conversely, an unjust enrichment claim may proceed "when the written agreement, or lack thereof, does not cover the full scope of the dispute between the parties." *Gemma Power Sys., LLC v. Exelon W. Medway II, LLC*, No. 19 Civ. 00705 (CM), 2019 WL 3162088, at *5 (S.D.N.Y. July 1, 2019) (citing *Joseph Sternberg, Inc. v. Walberg 36th St. Assocs.*, 187 A.D.2d 225, 227–28, 594 N.Y.S.2d 144 (1st Dep't 1993)).

EDAN and PAAS's unjust enrichment claim falls into two categories.  First, EDAN and PAAS seek $3.8 million in damages on the ground that ADYB and H. Cohen "unjustly received benefits to the developments, improvements, modifications and additions to the patents." [ECF No. 49 at 34 ¶¶ 115, 117.]  Second, EDAN and PAAS seek $520,000 in damages from the monthly

payments EDAN transmitted to H. Cohen on the assumption that H. Cohen "would continue to cooperate and not frustrate or thwart any potential commercialization of the Patents."  [ECF No. 49 at 33 ¶ 112, 34 ¶ 117.]

EDAN and PAAS cannot maintain an unjust enrichment claim based on the first category because it is duplicative of their breach of contract claim.  This part of the unjust enrichment claim relies on identical facts and seeks identical damages as their breach of contract claim, which is "plainly insufficient."  *Hesse v. Godiva Chocolatier, Inc.*, 463 F. Supp. 3d 453, 474 (S.D.N.Y. 2020) (citing *Koenig v. Boulder Brands, Inc.*, 995 F. Supp. 2d 274, 290 (S.D.N.Y. 2014)); *see Prof'l Merch. Advance Capital, LLC v. C Care Servs., LLC*, No. 13–cv–6562 (RJS), 2015 WL 4392081, at *6 (S.D.N.Y. July 15, 2015) (dismissing unjust enrichment claim as duplicative of breach of contract claim "since there is an enforceable agreement and the same damages are sought" (collecting cases)).  Indeed, EDAN and PAAS fail to respond to ADYB's argument that this portion of the unjust enrichment claim is duplicative of the breach of contract claim or otherwise explain why it is not.  *See Nelson v. MillerCoors, LLC*, 246 F. Supp. 3d 666, 679 (E.D.N.Y. 2017) (noting that "claims for unjust enrichment will not survive a motion to dismiss where plaintiffs fail to explain how their unjust enrichment claim is not merely duplicative of their other causes of action" (citing *Ebin v. Kangadis Food Inc.*, 13–CV–2311, 2013 WL 6504547, at *7 (S.D.N.Y. Dec. 11, 2013))).

With respect to the second category, to the extent the claim is predicated on the additional payments made to H. Cohen, EDAN and PAAS have plausibly stated a claim for unjust enrichment against H. Cohen, but *not* against ADYB.  EDAN and PAAS allege that nothing in the original agreements entitled H. Cohen to monthly payments but EDAN acquiesced in his demands given the potential of the PPG deal and concerns that he could ruin the deal.  [ECF No. 49 ¶¶ 50, 67–70.]  While EDAN and PAAS characterize the direct payments of $520,000 as part of their

45

"investment[]" [*id.* ¶ 1; *see* ECF No. 110 at 7], the allegations in the counterclaim nowhere suggest that such payments fell within the scope of any valid, enforceable contract between the parties. Such payments therefore provide a plausible basis for an unjust enrichment claim sufficient to survive a motion to dismiss. *See Dart Brokerage Corp. v. American Commerce Ins. Co.*, No. 13 Civ. 04015(LGS), 2013 WL 5966901, at *3 (S.D.N.Y. Nov. 7, 2013) (declining to dismiss unjust enrichment claim because plaintiff "alleged that it performed work outside of the scope of the contract" and it was unclear whether the contract clearly controlled plaintiff's claim); *Keybank, Nat'l Ass'n v. Quality Payroll Sys., Inc.*, No. 06-CV-3013 (JS)(AKT), 2007 WL 9710295, at *4 (E.D.N.Y. Mar. 30, 2007) (denying motion to dismiss where unjust enrichment claim related to "conduct which is not covered by any of the underlying agreements"); *cf. 2002 Lawrence R. Buchalter Alaska Trust v. Phila. Fin. Life Assur. Co.*, 96 F. Supp. 3d 182, 236 (S.D.N.Y. 2015) (dismissing unjust enrichment claim because plaintiff did not allege that payments were outside the scope of the parties' contract).

The claim for unjust enrichment cannot go forward against ADYB.  The allegations with respect to the increased monthly payments concern only H. Cohen and fail even to mention ADYB. [*See* ECF No. 49 ¶¶ 49–50, 59–67.]  Nor is there a basis to hold H. Cohen and ADYB jointly and severally liable on that claim.  Under New York law, tortfeasors may be held jointly and severally liable when they "act concurrently or in concert to produce a single injury." *In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig,*, 447 F. Supp. 2d 289, 297 (S.D.N.Y. 2006) (collecting cases); *see also Bank of China v. Sub-Zero, Inc.*, No. 02Civ.4457(RMB)(AJP), 2005 WL 1149780, at *1 (S.D.N.Y. May 16, 2005) (collecting cases).  Here, there are no allegations that ADYB acted concurrently or in concert with H. Cohen with respect to the increased monthly payments.  While the first amended counterclaim is sloppily pleaded and generally refers to H. Cohen and ADYB interchangeably, the allegations regarding the increased monthly payments specifically refer only

to H. Cohen.  [*See* ECF No. 49 ¶¶ 49–50, 59–67.]  As such, EDAN and PAAS have failed to state

a claim for unjust enrichment against ADYB or to plead allegations sufficient to support joint and

several liability.  Accordingly, EDAN and PAAS's unjust enrichment claim survives only with

respect to H. Cohen and only insofar as it is based on the increased monthly payments transmitted

to H. Cohen.

### 5.  <u>Libel (Count VI)</u>

In the statement of facts section of the first amended counterclaim, EDAN and PAAS allege

that the libelous communications began in October 2018.  [ECF No. 49 ¶¶ 77–78, 80.]  In one

instance, however, they allege that H. Cohen began sending libelous e-mails in October 2017.  [*Id.*

¶ 119.]  The statute of limitations for a libel claim is one year.  N.Y. C.P.L.R. § 215(3); *Van*

*Busltirk v. N. Y. Times Co.*, 325 F.3d 87, 89 (2d Cir. 2003).  As such, any libelous statements made

before August 20, 2018, one year before this action commenced, are nonactionable since there is

a one-year statute of limitations for libel claims.  N.Y. C.P.L.R. § 215(3); *see id.* § 203(d)

(providing that counterclaims are tolled when the complaint is filed); *Aramony v. United Way of*

*America*, No. 96 Civ. 3962(SAS), 1998 WL 205331, at *3 (S.D.N.Y. Apr. 27, 1998) ("C.P.L.R.

§ 203(d), not the federal tolling rule, governs the tolling of state law counterclaims."); *accord*

*Puebla Palomo v. DeMaio*, 403 F. Supp. 3d 42, 74 (N.D.N.Y. 2019).  Thus, to the extent the libel

claim is based on statements made prior to August 20, 2018, the claim is time-barred and dismissal

is warranted on this ground alone.

Insofar as EDAN and PAAS assert a claim for libel based on statements made after August

20, 2018, the claim nonetheless fails as a matter of law.  To state a claim for libel under New York

law, the claimant must plead "(1) a false statement that is (2) published to a third party (3) without

privilege or authorization, and that (4) causes harm."  *Elias v. Rolling Stone LLC*, 872 F.3d 97,

104 (2d Cir. 2017) (quoting *Stepanov v. Dow Jones & Co.*, 120 A.D.3d 28, 34, 987 N.Y.S.2d 37 (1st Dep't 2014)).

"A long line of cases in this District holds that a defamation claim is only sufficient if it adequately identifies the purported communication, and an indication of who made the communication, when it was made, and to whom it was communicated." *Evliyaoglu Tekstil A.S. v. Turko Textile LLC*, No. 19-cv-10769 (LJL), 2020 WL 7774377, at *3 (S.D.N.Y. Dec. 30, 2020) (internal quotation marks omitted) (collecting cases); *see also Chidume v. Greenburgh-N. Castle Union Free Sch. Dist.*, 2020 WL 2131771, at *14 (S.D.N.Y. May 4, 2020) (noting that a plaintiff must "identify the allegedly defamatory statements, the person who made the statements, the time when the statements were made, and the third parties to whom the statements were published" (quoting *Alvarado v. Mt. Pleasant Cottage Sch. Dist.*, 404 F. Supp. 3d 763, 790 (S.D.N.Y. 2019))). "Vagueness as to the complained-of conduct is particularly inappropriate when pleading a defamation claim" because "the complaint [must] afford defendant sufficient notice of the communications complained of to enable him to defend himself." *Tannerite Sports, LLC v. NBCUniversal News Grp.*, 864 F.3d 236, 251 (2d Cir. 2017) (alteration in original) (quoting *Kelly v. Schmidberger*, 806 F.2d 44, 46 (2d Cir. 1986)).

The allegations in Count VI lack the specificity required to state a claim for libel. EDAN and PAAS allege that H. Cohen sent e-mails "falsely assert[ing] that EDAN has breached the Investment Agreement with ADYB" and that "[u]pon information and belief, [H. Cohen] dispatched additional e-mails to representatives of PPG falsely accusing EDAN of fraudulent behavior, lying, and dishonesty." [ECF No. 49 ¶ 119.] EDAN and PAAS's general allegations that H. Cohen made accusations of fraudulent behavior, lying, and dishonesty are not sufficiently particularized to sustain a claim for libel. EDAN and PAAS allege no specific details regarding such accusations to put ADYB on notice of the complained-of communications. *See Soojung Jang*

*v. Trs. of St. Johnsbury Acad.*, 331 F. Supp. 3d 312, 345 (D. Vt. 2018) (dismissing defamation claim because plaintiff failed to identify specific statements); *Young v. Suffolk County*, 705 F. Supp. 2d 183, 212 n.12 (E.D.N.Y. 2010) (dismissing libel and slander claims where plaintiff "failed to allege any specifics regarding the statements"); *Sawyer v. Musumeci*, Nos. 96 Civ. 6497(LLS), 96 Civ. 6689(LLS), 1997 WL 381798, at *2 (S.D.N.Y. July 9, 1997) (dismissing defamation claims where the claims were "too conclusory" and did not identify the allegedly defamatory statements), *aff'd*, 165 F.3d 14 (2d Cir. 1998).

Moreover, while H. Cohen's alleged statements that EDAN breached the Investment Agreement may be more specific, EDAN and PAAS fail to allege specifically when and to whom the statements were made, alleging only vaguely that H. Cohen sent e-mails to representatives of PPG. That is insufficient to state a claim. *See Biomed Pharms.*, 775 F. Supp. 2d at 739 (dismissing defamation claim where plaintiff alleged "only vaguely that [the statements] were made to unidentified patients of [plaintiff], unidentified physicians, and unidentified individuals at the [state agency]").

To the extent the libel claim is not time-barred, EDAN and PAAS have failed to state a claim upon which relief can be granted. Accordingly, the libel claim (Count VI) must be dismissed.

### 6. **Declaratory Judgment (Count IX)**

EDAN and PAAS have failed to state a claim for declaratory judgment. Where a claim for declaratory judgment "seeks a declaration of the same rights as will be determined under [a claimant's] action for breach of contract," it is duplicative and must be dismissed. *Lorterdan Props. at Ramapo I, LLC v. Watchtower Bible & Tract Soc'y of N.Y., Inc.*, No. 11-CV-3656 (CS), 2012 WL 2873648, at *9 (S.D.N.Y. July 10, 2012) (quoting *Aeolus Down, Inc. v. Credit Suisse Int'l*, No. 10-CV-8293, 2011 WL 5570062 (LLS), at *5 (S.D.N.Y. Nov. 16, 2011)). Conversely,

where "a claim for declaratory judgment 'seeks distinct relief from' a breach of contract claim, then notwithstanding some overlap between the two claims, it is not duplicative." *Personal Watercraft Prod. SARL v. Robinson*, No. 16-cv-9771 (AJN), 2017 WL 4329790, at *11 (S.D.N.Y. Sept. 1, 2017) (quoting *Myers Indus.*, 171 F. Supp. 3d at 123).

The claim for declaratory judgment here is duplicative of the breach of contract counterclaims and therefore must be dismissed. EDAN and PAAS largely concede this, arguing only that the claim should survive with respect to subsections (h), (i), and (j).[8] [ECF No. 107 at 19–20.] These subsections seek a declaratory judgment that "(h) EDAN is the rightful assignee of Patents '876, '621, and '363, now and in the future"; "(i) The milestone provision of the Investment Agreement is unenforceable by ADYB and [H. Cohen] due to, *inter alia*, estoppel, bad faith, unclean hands and intentionally wrongful conduct"; and "(j) [E. Cohen] holds a non-dilutive twenty-percent interest in ADYB." [ECF No. 49 ¶ 139.]

Subsections (h) and (i) will necessarily be resolved in the course of the litigation since the breach of contract claim centers around whether the benchmarks were triggered, thereby entitling H. Cohen to revoke the assignment of the patents. [ECF No. 49 ¶ 11.] Subsection (j) can only be construed as asserted by E. Cohen, and that claim is clearly duplicative of his independent claim for breach of contract. *See Sofi Classic S.A. de C.V. v. Hurowitz*, 444 F. Supp. 2d 231, 249–50 (S.D.N.Y. 2006) ("Plaintiffs' declaratory judgment claim seeks resolution of legal issues that will, of necessity, be resolved in the course of the litigation of the other causes of action. Therefore, the claim is duplicative in that it seeks no relief that is not implicitly sought in the other causes of action." (citing *Del Greco v. CVS Corp.*, 337 F. Supp. 2d 475, 488 (S.D.N.Y. 2004))).

---

[8] Although their brief refers to subsection (e), not subsection (j), based on the nature of the claims, the order of the modern English alphabet, and their conclusory arguments, it appears EDAN and PAAS meant to refer to subsection (j), not subsection (e). [*See* ECF No. 107 at 19–20.] Indeed, ADYB addresses subsection (j), not subsection (e), in its reply. [ECF No. 110 at 9–10.]

Accordingly, the declaratory judgment counterclaim is dismissed in its entirety.  [ECF No. 49 ¶ 139.]

# V.

## MOTION FOR LEAVE TO FILE A SECOND AMENDED COUNTERCLAIM

EDAN and PAAS request leave to file a second amended answer and counterclaim.  [ECF No. 130 at 1.]  They propose to add a cause of action against H. Cohen for a fraudulent conveyance on the ground that he allegedly conveyed his shares in ADYB to his wife during the pendency of this lawsuit.  [*Id.*]

Whether to grant leave to amend rests in the sound discretion of the Court.  *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007) (citing *Zahra v. Town of Southold*, 48 F.3d 674, 686 (2d Cir. 1995); and *Ansam Assocs., Inc. v. Cola Petroleum, Ltd.*, 760 F.2d 442, 446 (2d Cir. 1985)).  While the Court "should freely give leave when justice so requires," Fed. R. Civ. P. 15(a)(2), leave to amend may be denied when amendment would be futile, *Chunn v. Amtrak*, 916 F.3d 204, 208 (2d Cir. 2019) (citing *Tocker v. Philip Morris Cos., Inc.*, 470 F.3d 481, 491 (2d Cir. 2006)).  Amendment would be futile if the proposed claim could not withstand a motion to dismiss.  *F5 Capital v. Pappas*, 856 F.3d 61, 89 (2d Cir. 2017) (quoting *Balintulo v. Ford Motor Co.*, 796 F.3d 160, 164–65 (2d Cir. 2015)).

Here, leave to amend would be futile because the Court would lack subject matter jurisdiction over the proposed claim.  Because the proposed claim does not present a federal question and H. Cohen cannot be sued in diversity, the only basis for subject matter jurisdiction would be supplemental jurisdiction.  Supplemental jurisdiction would be improper because the claim for fraudulent conveyance rests on facts completely unrelated in time and in substance to those underlying ADYB's claims—*i.e.*, the claims within the Court's original jurisdiction.  *See Schwartz v. Sensei, LLC*, 17-CV-04124 (SN), 2020 WL 5817010, at *4 (S.D.N.Y. Sept. 30, 2020)

(holding that court lacked supplemental jurisdiction over common law claims that were distinct in time and in substance from federal claims); *Bu ex rel. Bu v. Benenson*, 181 F. Supp. 2d 247, 254 (S.D.N.Y. 2001) (finding no basis for supplemental jurisdiction over claim involving "different rights, different interests, and different underlying facts").  Because it is readily apparent that there would be no basis for supplemental jurisdiction over the proposed claim, the Court denies as futile leave to amend to add the proposed fraudulent conveyance counterclaim.  *See Broidy Capital Mgmt. LLC v. Benomar*, 944 F.3d 436, 447 (2d Cir. 2019) (affirming denial of leave to amend as futile where proposed amendment failed to establish jurisdiction); *Mason v. Fantasy, LLC*, No. 13-cv-02020-RM-KLM, 2016 WL 11697062, at *3 (D. Colo. May 23, 2016) (denying leave to amend as futile because "supplemental jurisdiction does not exist over plaintiffs' proposed fraudulent conveyance claim").

## VI.

## CONCLUSION

For the reasons discussed above: (1) the motion to join H. Cohen and E. Cohen as necessary parties is GRANTED; (2) H. Cohen's motion to dismiss is DENIED without prejudice; (3) ADYB's motion to dismiss is GRANTED IN PART and DENIED IN PART; and (4) EDAN and PAAS's request for leave to further amend is DENIED.  The Court dismisses Counts II, III, IV, V (in part), VI, and IX of the counterclaims.  [ECF No. 49.]

The Clerk of Court is respectfully requested to terminate docket entries 65, 91, 93, and 130 and to issue a summons to Edan Administration Services (Ireland) Ltd., Pom Advanced Armor Solutions LLC, and Edwin Cohen for service on Counterclaim Defendant Hananya Cohen.

**SO ORDERED.**

**Date:  March 29, 2021**
      **New York, NY**

**MARY KAY VYSKOCIL**
**United States District Judge**

52